# Syllabus

Chief Justice:
Stephen J. Markman

Justices:
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein
Kurtis T. Wilder
Elizabeth T. Clement

This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.

Reporter of Decisions:
Kathryn L. Loomis

JOHNSON v VANDERKOOI
HARRISON v VANDERKOOI

Docket Nos. 156057-156058. Argued on application for leave to appeal April 12, 2018. Decided July 30, 2018.

Denishio Johnson filed an action in the Kent Circuit Court against the city of Grand Rapids (the City) and Captain Curtis VanderKooi and Officer Elliott Bargas of the Grand Rapids Police Department (GRPD). Johnson asserted claims under 42 USC 1981 and 42 USC 1983, alleging violations of his constitutional rights. The matter originated in 2011 when the GRPD investigated a complaint that a person, eventually identified as Johnson, was looking into vehicles in a parking lot. After GRPD officers stopped Johnson in the parking lot and were unable to confirm his identity or age, Bargas photographed and fingerprinted Johnson in accordance with the City's photograph and print (P&P) procedure. VanderKooi, who arrived at the scene at some point during this process, approved of Bargas's actions. The GRPD regularly used the P&P procedure for gathering identifying information about individuals during the course of a field interrogation or a stop if an officer deemed it appropriate based on the facts and circumstances of that incident. Johnson was ultimately released and was not charged with a crime. VanderKooi, Bargas, and the City moved separately for summary disposition. The court, George J. Quist, J., granted VanderKooi's and Bargas's motions for summary disposition of Johnson's § 1981 and § 1983 claims and also granted the City's motion for summary disposition, holding, in relevant part, that Johnson had failed to establish that the P&P procedure was unconstitutional on its face or as applied. Johnson appealed, and the Court of Appeals, BOONSTRA and O'BRIEN, JJ. (WILDER, P.J., not participating), affirmed. 319 Mich App 589 (2017).

Keyon Harrison brought a separate action in the Kent Circuit Court against VanderKooi and the City. Harrison asserted claims under 42 USC 1981, 42 USC 1983, and 42 USC 1988, alleging violations of his constitutional rights. The matter originated in 2012 after VanderKooi saw Harrison give someone a large model train engine. VanderKooi became suspicious and confronted Harrison after following him to a nearby park. Still suspicious after speaking with Harrison, VanderKooi asked another officer to come to the scene and photograph Harrison. An officer arrived and performed a P&P on Harrison. Harrison, too, was released and was not charged with a crime. VanderKooi and the City moved for summary disposition, which the court, George J. Quist, J., granted, holding, in relevant part, that Harrison had not shown that the P&P procedure was unconstitutional. Harrison appealed, and the Court of Appeals, BOONSTRA

and O'BRIEN, JJ. (WILDER, P.J., not participating), affirmed in an unpublished per curiam opinion issued May 23, 2017 (Docket No. 330537).

The reasoning of the Court of Appeals was the same in both cases with regard to municipal liability: the City could not be held liable because neither Johnson nor Harrison had demonstrated that any alleged constitutional violation resulted from a municipal policy or a custom that was so persistent and widespread as to practically have the force of law. The Court of Appeals did not decide whether the P&Ps in these cases violated Johnson's or Harrison's Fourth Amendment right to be free from unreasonable searches and seizures. Johnson and Harrison filed a joint application for leave to appeal in the Supreme Court. The Supreme Court ordered and heard oral argument on whether to grant the application or take other action. 501 Mich 954 (2018).

In an opinion by Justice BERNSTEIN, joined by Justices MCCORMACK, VIVIANO, and CLEMENT, the Supreme Court, in lieu of granting leave to appeal, *held*:

A policy or custom that authorizes, but does not require, police officers to engage in specific conduct may form the basis for municipal liability, and when an officer engages in the specifically authorized conduct, the policy or custom itself is the moving force behind an alleged constitutional injury arising from the officer's actions. In these cases, the City conceded that there exists a custom of performing a P&P during a field interrogation when an officer deems it appropriate. Whether the GRPD's custom of photographing and fingerprinting individuals as part of field interrogations when there was no probable cause for an arrest had become an official policy of the municipality presented a genuine issue of material fact when the City's admissions, the officers' testimony, the GRPD manual, and other training materials were viewed in the light most favorable to plaintiffs. Additionally, genuine issues of material fact remained concerning causation and whether the policy or custom constituted the moving force behind the alleged constitutional violations. Therefore, the Court of Appeals erred by affirming the trial court's orders granting summary disposition in favor of the City regarding municipal liability. Accordingly, Part III of the Court of Appeals' opinions in both cases was reversed, and the cases were remanded to the Court of Appeals to determine whether the P&Ps at issue violated Johnson's and Harrison's Fourth Amendment right to be free from unreasonable searches and seizures.

1. Establishing municipal liability under 42 USC 1983 requires proof that (1) a plaintiff's federal constitutional or statutory rights were violated and (2) the violation was caused by a policy or custom of the municipality. A custom may be an accepted, though unwritten, practice of executing governmental policy that is so permanent and well-settled as to have the force of law. An official policy may consist of formal rules or understandings—often but not always committed to writing—that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time. A policy or custom that authorizes municipal employees to perform their duties in a particular manner represents a deliberate decision of the municipality, and an employee's actions in the performance of his or her duties in the manner authorized may be considered acts of the municipality. To survive a municipality's motion for summary disposition of a claim alleging municipal liability, a plaintiff must first identify a policy or custom of the municipality and then point to facts in the record

demonstrating that implementation or execution of that policy or custom caused a violation of the plaintiff's federal constitutional or statutory rights. In this case, the City conceded that the P&P procedure was a custom of the City, and record evidence supported a conclusion that the P&P procedure was also an official policy. The P&P procedure was referenced in the GRPD training manual, which stated that P&Ps were mandatory under some circumstances and that a P&P was something to be included in a field interrogation report. P&P procedures were listed under the heading "training considerations" and slides from a training presentation included one slide showing a model field interrogation report with a photograph and a fingerprint card, as well as slides describing hypothetical situations in which an officer performed a P&P on an individual suspected of criminal activity but for which probable cause to arrest did not exist. The existence of an official policy was further supported by the reasonable inference that public resources were used both to develop the training materials and to train officers. Even without the City's concession, the evidence viewed in the light most favorable to Johnson and Harrison was sufficient for reasonable minds to differ regarding the existence of an official policy or custom authorizing the specific conduct that is alleged to be unconstitutional.

2. A municipality's liability for a municipal employee's conduct requires that the policy or custom under which the employee acted was the "moving force" behind the action that gave rise to the alleged constitutional violation. Simply put, the policy or custom must be the cause of the violation. When the action taken or directed by a municipality violates federal law, then the municipal action is the moving force behind a plaintiff's injury and the requirements of causation are satisfied. A policy or custom that authorizes, but does not require, police officers to engage in specific conduct may form the basis for municipal liability, and when an officer engages in the specifically authorized conduct, the policy or custom itself is the moving force behind an alleged constitutional injury arising from the officer's actions. Traditional tort concepts of causation apply to the analysis of causation in the context of municipal liability. To avoid summary disposition, Johnson and Harrison had to demonstrate that reasonable minds could differ about whether the P&P policy or custom was the moving force behind the alleged Fourth Amendment violations. That is, plaintiffs had to point to facts from which a person could reasonably infer that the municipality's policy or custom was the cause in fact and the proximate cause of the alleged constitutional violation. If a policy or custom authorizes, but does not necessarily require, the use of a specific tactic and a police officer acts in accordance with that authorization, then the policy or custom is the cause in fact and the proximate cause of a constitutional violation arising from the use of that tactic. In this case, the municipality authorized the P&P procedure and police officers exercised their discretion in performing P&Ps. It was reasonably foreseeable that performing a P&P in accordance with the policy or custom in this case would result in a Fourth Amendment violation, assuming that taking a person's fingerprints or picture without probable cause of criminal conduct is unconstitutional. The Court of Appeals erroneously concluded that a municipality cannot be held liable unless its policy or custom specifically directed its employees to violate a person's constitutional rights. A municipality may be liable for authorizing the conduct that violates a person's constitutional rights; the municipality need not specifically direct that its employees engage in that conduct.

3. It was unnecessary to decide whether a § 1983 plaintiff must prove deliberate indifference when alleging that the execution of a facially lawful policy or custom caused the plaintiff's injury. Rather, it was sufficient to state that a reviewing court must determine whether

the plaintiff claims that the alleged injury was caused by a municipal action that itself directed or authorized the violation of a federally protected right or whether the plaintiff claims that a municipality's inaction or omission caused municipal employees to violate the plaintiff's rights. The majority agreed with the concurrence that if the theory of liability is premised on some variant of the latter, then the plaintiff must also show deliberate indifference to prevail. When a theory of liability is based on the absence of governmental action, it makes sense to more critically scrutinize claims of governmental culpability for that absence. But the Supreme Court has never explicitly required such critical scrutiny when the government specifically and affirmatively authorized, but did not require, its employees to engage in allegedly unlawful conduct. In this case, plaintiffs alleged that a municipal action authorized a deprivation of federal rights. Thus, whether plaintiffs specifically claimed that the P&P policy was itself facially unconstitutional was beside the point for the purposes of determining whether the Court of Appeals erred.

Part III of the Court of Appeals' judgments reversed and cases remanded to the Court of Appeals to determine whether the P&Ps at issue violated Johnson's or Harrison's Fourth Amendment right to be free from unreasonable searches and seizures.

Justice WILDER, joined by Chief Justice MARKMAN and Justice ZAHRA, concurred in the result reached by the majority but wrote separately to provide guidance to future § 1983 plaintiffs and defendants about what they must demonstrate in order to prevail in a municipal liability case, as well as to provide the clearest guidance possible to lower courts so that they may fairly adjudicate such claims. Specifically, Justice WILDER agreed with the majority that there was a genuine issue of material fact concerning the existence of a municipal policy or custom and whether that policy or custom caused the alleged constitutional violations. A municipality's liability is limited to actions for which the municipality is actually responsible; municipal liability cannot be premised on a respondeat superior theory. If a § 1983 plaintiff alleges that a municipal policy or custom is facially unlawful, he or she need only show that the policy existed and that its implementation caused the violation of his or her federal rights. But if a § 1983 plaintiff alleges that a municipal policy or custom is facially lawful, he or she must show not only that the policy existed and that its execution caused the violation of the plaintiff's federal rights, but also that the municipality was deliberately indifferent to the unlawful way in which that policy was implemented. In this case, Johnson and Harrison went to some length to argue that the deliberate indifference standard did not apply to the instant situation. Consequently, if that were the case, Johnson and Harrison had to show that the municipality's policy of performing P&Ps without probable cause was unconstitutional on its face. The majority suggested that it was unnecessary to address whether the policy itself was facially unconstitutional because the policy authorized the allegedly unconstitutional conduct and, therefore, the alleged constitutional violation was the result of the municipality's actions rather than a failure to train its employees. However, the distinction drawn by the majority was, respectfully, meaningless. An allegation that an employee unconstitutionally applied a facially constitutional policy is the logical equivalent of an allegation that the municipality failed to adequately train its employees in how to constitutionally apply that policy. In either case, the municipality is being held liable because of its failure to ensure that its policy is applied constitutionally. Justice WILDER would have specifically directed the Court of Appeals on remand to decide whether the policy or custom at issue was facially unconstitutional.

©2018 State of Michigan

**Michigan Supreme Court**
**Lansing, Michigan**

# OPINION

Chief Justice:
Stephen J. Markman

Justices:
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein
Kurtis T. Wilder
Elizabeth T. Clement

FILED July 30, 2018

STATE OF MICHIGAN

SUPREME COURT

DENISHIO JOHNSON,

      Plaintiff-Appellant,

v                                     No. 156057

CURTIS VANDERKOOI, ELLIOTT
BARGAS, and CITY OF GRAND RAPIDS,

      Defendants-Appellees.

KEYON HARRISON,

      Plaintiff-Appellant,

v                                     No. 156058

CURTIS VANDERKOOI and CITY OF
GRAND RAPIDS,

      Defendants-Appellees.

BEFORE THE ENTIRE BENCH

BERNSTEIN, J.

These consolidated cases arise from two separate incidents where plaintiffs were individually stopped and questioned by Grand Rapids Police Department (GRPD) officers. During these stops, plaintiffs' photographs and fingerprints were taken in accordance with the GRPD's "photograph and print" (P&P) procedures. Alleging that the P&Ps violated their constitutional rights, plaintiffs filed separate civil lawsuits in the Kent Circuit Court against the city of Grand Rapids (the City), as well as against the individual police officers involved. The trial court granted summary disposition in favor of all defendants in both cases. Plaintiffs each appealed by right, and the Court of Appeals affirmed in separate opinions.[1] Relevant to this appeal, both opinions affirmed summary disposition for the City on plaintiffs' municipal-liability claims on the basis that a policy that does not direct or require police officers to take a specific action cannot give rise to municipal liability under 42 USC 1983.

We disagree with the Court of Appeals and hold that a policy or custom that authorizes, but does not require, police officers to engage in specific conduct may form the basis for municipal liability. Additionally, when an officer engages in the specifically authorized conduct, the policy or custom itself is the moving force behind an alleged constitutional injury arising from the officer's actions. Accordingly, we reverse in part the judgments of the Court of Appeals, and we remand these cases to the Court of Appeals for further consideration.

---

[1] See *Johnson v VanderKooi*, 319 Mich App 589; 903 NW2d 843 (2017); *Harrison v VanderKooi*, unpublished per curiam opinion of the Court of Appeals, issued May 23, 2017 (Docket No. 330537).

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The P&Ps giving rise to these lawsuits took place during two separate incidents. At the time of the incidents, each GRPD patrol officer was assigned as a part of their standard equipment a camera, a fingerprinting kit, and GRPD "print cards" for storing an individual's copied fingerprints. Generally speaking, a P&P involved an officer's use of this equipment to take a person's photograph and fingerprints whenever an officer deemed the P&P necessary given the facts and circumstances. After a P&P was completed, the photographs were uploaded to a digital log. Completed print cards were collected and submitted to the Latent Print Unit. Latent print examiners then checked all the submitted fingerprints against the Kent County Correctional Facility database and the Automated Fingerprint Identification System. After being processed, the cards were filed and stored in a box according to their respective year.

The first incident giving rise to these lawsuits involved the field interrogation of plaintiff Denishio Johnson. On August 15, 2011, the GRPD received a tip that a young black male, later identified as Johnson, had been observed walking through an athletic club's parking lot and peering into vehicles. Officer Elliott Bargas responded to the tip and initiated contact with Johnson. Johnson, who had no identification, told Bargas that he was 15 years old, that he lived nearby, and that he used the parking lot as a shortcut. Bargas was skeptical of Johnson's story, and being aware of several prior thefts in and near the parking lot, he decided to perform a P&P to see if any witnesses or evidence would tie Johnson to those crimes. After Johnson's mother arrived and verified his name and age, Johnson was released. At some point during this process, Captain Curtis

VanderKooi arrived and approved Bargas's actions. Johnson was never charged with a crime.

The second event occurred on May 31, 2012, after VanderKooi observed Keyon Harrison, a young black male, walk up to another boy and hand him what VanderKooi believed was a large model train engine. Suspicious of the hand-off, VanderKooi followed Harrison to a park. After initiating contact, VanderKooi identified himself and questioned Harrison. Harrison, who had no identification, told VanderKooi that he had been returning the train engine, which he had used for a school project. VanderKooi, still suspicious, radioed in a request for another officer to come take Harrison's photograph. Sergeant Stephen LaBrecque arrived a short time later and performed a P&P on Harrison, despite being asked to take only a photograph. Harrison was released after his story was confirmed, and he was never charged with a crime.

Johnson and Harrison subsequently filed separate lawsuits in the Kent Circuit Court, and the cases were assigned to the same judge. Plaintiffs argued, in part, that the officers and the City were liable pursuant to 42 USC 1983 for violating plaintiffs' Fourth and Fifth Amendment rights when the officers performed P&Ps without probable cause, lawful authority, or lawful consent. Both plaintiffs also initially claimed that race was a factor in the officers' decisions to perform P&Ps, though Johnson later dropped that claim.

In two separate opinions, the trial court granted summary disposition in favor of the City pursuant to MCR 2.116(C)(10)[2] and in favor of the officers pursuant to MCR

---

[2] MCR 2.116(C)(10) allows a party to move the court for judgment on all or part of a claim when, "[e]xcept as to the amount of damages, there is no genuine issue as to any

4

2.116(C)(7), (10), and (I)(2). Plaintiffs individually appealed by right in the Court of Appeals. In two separate opinions relying on the same legal analysis, the Court of Appeals affirmed the trial court's judgments regarding plaintiffs' municipal-liability claims.[3] Specifically, the Court of Appeals held that the City could not be held liable because plaintiffs did not demonstrate that any of the alleged constitutional violations resulted from a municipal policy or a custom so persistent and widespread as to practically have the force of law. *Johnson*, 319 Mich App at 626-628. The Court of Appeals did not decide whether the P&Ps actually violated either plaintiff's Fourth Amendment rights.

Plaintiffs filed a joint application for leave to appeal in this Court, challenging the Court of Appeals' ruling on the City's liability under 42 USC 1983. They argued that the record demonstrated that the City had a policy or custom of performing P&Ps without probable cause during investigatory stops pursuant to *Terry v Ohio*, 392 US 1, 22; 88 S Ct 1868; 20 L Ed 2d 889 (1968),[4] which may be based on reasonable suspicion of

---

material fact, and the moving party is entitled to judgment or partial judgment as a matter of law."

[3] In both cases, the Court of Appeals also affirmed that the individual officers were entitled to qualified immunity and that the motion to strike each plaintiff's proposed expert witness was properly granted. The Court of Appeals further held that the P&Ps did not violate plaintiffs' Fifth Amendment rights. *Johnson*, 319 Mich App at 618-620; *Harrison*, unpub op at 5. And in *Harrison*, unpub op at 9-11, the panel affirmed that the record did not support Harrison's equal-protection claim. These issues were not presented in plaintiffs' joint application for leave to appeal in this Court.

[4] "[A] police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." *Terry*, 392 US at 22.

5

criminal conduct, and that execution of that policy or custom violated their Fourth Amendment rights. We scheduled oral argument on the application and instructed the parties to address "whether any alleged violation of the plaintiffs' constitutional rights [was] the result of a policy or custom instituted or executed by the defendant City of Grand Rapids." *Johnson v VanderKooi*, 501 Mich 954, 954-955 (2018).

## II. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). A motion brought pursuant to MCR 2.116(C)(10) tests the factual sufficiency of a claim. *Id*. at 120. When reviewing such a motion, "a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties . . . in the light most favorable to the party opposing the motion." *Id*. A genuine issue of material fact exists when the record "leave[s] open an issue upon which reasonable minds might differ." *Shallal v Catholic Social Servs of Wayne Co*, 455 Mich 604, 609; 566 NW2d 571 (1997) (quotation marks and citations omitted).

## III. ANALYSIS

The issue presented is whether there exists a genuine issue of material fact as to whether the alleged violations of plaintiffs' Fourth Amendment rights were caused by a policy or custom of the City. Plaintiffs' cause of action arises from 42 USC 1983, which provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the

Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

It is undisputed that a local municipality constitutes a "person" to which 42 USC 1983 applies. *Monell v Dep't of Social Servs of the City of New York*, 436 US 658, 690-691; 98 S Ct 2018; 56 L Ed 2d 611 (1978). Establishing municipal liability under 42 USC 1983 requires proof that: (1) a plaintiff's federal constitutional or statutory rights were violated and (2) the violation was caused by a policy or custom of the municipality. *Id*. For the purposes of this appeal, we assume that plaintiffs' Fourth Amendment rights were violated by the P&Ps performed by the GRPD officers and focus solely on the second prong of the analysis. *Collins v Harker Hts, Texas*, 503 US 115, 121-122; 112 S Ct 1061; 117 L Ed 2d 261 (1992) (holding that whether a legal violation occurred and whether a municipality might be liable for that violation are separate legal inquiries).

A constitutional violation is attributable to a municipality if "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell*, 436 US at 690. Liability may also be based on a "governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels," *id*. at 691, if the "relevant practice is so widespread as to have the force of law," *Bd of the Co Comm'rs of Bryan Co, Oklahoma v Brown*, 520 US 397, 404; 117 S Ct 1382; 137 L Ed 2d 626 (1997).[5] However, liability may not be based on a

_____

[5] In *Monell*, 436 US at 691, the United States Supreme Court wrote:

Congress included customs and usages [in 42 USC 1983] because of the persistent and widespread discriminatory practices of state officials . . . . Although not authorized by written law, such practices of state officials

7

respondeat superior theory. *Id*. at 403; *Jackson v Detroit*, 449 Mich 420, 433; 537 NW2d 151 (1995). If the claim is premised on a municipal action that is itself alleged to be unlawful, such as the adoption of the policy at issue in *Monell*, no independent assessment of municipal culpability is necessary. *Brown*, 520 US at 404-405. If, however, a plaintiff does not claim "that the municipal action itself violated federal law, or directed or authorized the deprivation of federal rights," then it must be shown that the municipality acted with deliberate indifference to the obvious risk that the failure to take a different course of action would cause the specific kind of injury alleged. *Id*. at 406; *City of Canton, Ohio v Harris*, 489 US 378, 388; 109 S Ct 1197; 103 L Ed 2d 412 (1989). Under either theory of liability, a plaintiff must also establish "an affirmative link between the policy or custom and the particular constitutional violation alleged." *Jackson*, 449 Mich at 433. Stated differently, the policy or custom must be the "moving force" behind the alleged constitutional violation. *Id*., citing *Monell*, 436 US at 694.

Accordingly, to survive summary disposition, a plaintiff must first identify and connect a policy or custom to the municipality, and then point to facts in the record demonstrating that implementation or execution of that policy or custom caused the alleged constitutional violation.

---

could well be so permanent and well settled as to constitute a "custom or usage" with the force of law. [Quoting *Adickes v S H Kress & Co*, 398 US 144, 167-168; 90 S Ct 1598; 26 L Ed 2d 142 (1970).]

8

## A. MUNICIPAL POLICY OR CUSTOM

The first question is whether there existed a policy or custom that was attributable to the City. While the policy in *Monell* was memorialized in writing, this is not a prerequisite for a finding of municipal liability. An " 'official policy' often refers to formal rules or understandings—*often but not always committed to writing*—that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time." *Pembaur v Cincinnati*, 475 US 469, 480-481; 106 S Ct 1292; 89 L Ed 2d 452 (1986) (emphasis added). Governmental customs may also give rise to liability. A "permanent and well settled" practice of governmental officials or employees may "constitute a 'custom or usage' with the force of law." *Monell*, 436 US at 691, quoting *Adickes v S H Kress & Co*, 398 US 144, 168; 90 S Ct 1598; 26 L Ed 2d 142 (1970). Thus, accepted, though unwritten, practices of executing governmental policy may give rise to liability for the purposes of *Monell*.[6]

The use of municipal resources to develop and implement practices and procedures can be evidence supporting the existence of an official policy. For example,

---

[6] Several federal courts have reached the same conclusion. See, e.g., *Mobley v Detroit*, 938 F Supp 2d 669, 684 (ED Mich, 2012) (finding the defendant liable based on its unwritten operating procedure of detaining, searching, and prosecuting individuals at unlicensed bars without individualized probable cause); *Hunter v Co of Sacramento*, 652 F3d 1225, 1233 (CA 9, 2011) (holding that a jury instruction defining a custom as "any permanent, widespread, well-settled practice or custom that constitutes a standard operating procedure of the defendant" was consistent with *Monell*); *O'Brien v Grand Rapids*, 23 F3d 990, 1004-1005 (CA 6, 1994) (finding illegal a municipal policy allowing the warrantless entry of homes during the management of critical incidents). Although caselaw from the federal circuits and federal district courts is not binding on this Court, it may be considered for its persuasive value. *Abela v Gen Motors Corp*, 469 Mich 603, 606; 677 NW2d 325 (2004).

in *O'Brien v Grand Rapids*, 23 F3d 990 (CA 6, 1994), the United States Court of Appeals for the Sixth Circuit concluded that an official policy arose from the development of a critical incident response plan that was silent as to the need for search warrants during such incidents. The defendants had hired an outside expert as a consultant to train police staff and used the expert's philosophy and teachings to develop a procedure manual. *Id*. at 1002 (opinion by Joiner, J.).[7] As a result, the defendants adopted into practice the notion that search warrants were unnecessary when responding to a critical incident. *Id*. The Sixth Circuit ruled that the commitment of money and personnel, coupled with the consistent conduct of the police officers in executing the practice, conclusively established the existence of an official policy that search warrants were unnecessary during critical incidents. *Id*. at 1003-1005.

We also believe that a municipality may be held liable for unlawful actions that it sanctioned or authorized, as well as for those that it specifically ordered. This conclusion is consistent with the controlling caselaw. In *Pembaur*, 475 US at 471, the question was whether a single verbal order from a prosecutor, who was vested with final decision-making authority, could constitute an official municipal policy. The Supreme Court observed that *Monell* had reasoned that "recovery from a municipality is limited to acts that are, properly speaking, acts 'of the municipality'—that is, acts which the municipality has officially *sanctioned or ordered*." *Id*. at 480 (emphasis added). Therefore, rather than focus on whether the prosecutor's order was a mandatory directive,

---

[7] Although his opinion was not the lead opinion, Judge Joiner wrote for the majority in *O'Brien* with regard to the city's liability.

the Supreme Court stressed in *Pembaur* that liability could arise from the unconstitutional conduct of an employee only if that conduct was tied to a decision of the municipality. *Id*. at 482-483. Accordingly, the Supreme Court held that liability attaches to a municipality only when "a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Id*. at 483-484. Once a municipality deliberately adopts a course of action, it may be held liable for its employee's violation of the law arising from the execution of that course of action.

Ordering municipal employees to engage in specific unconstitutional conduct, as occurred in *Pembaur* and *Monell*, will clearly lead to a finding of liability. However, a municipality may also deliberately choose to authorize multiple courses of action. For example, a policy could state: if X, one must then do A, B, or C. Even if only *one* of those options constitutes unconstitutional conduct, municipal liability could still result, because the mere act of sanctioning or authorizing the unconstitutional option was a deliberate choice on the part of the municipality. Moreover, a policy need not be written in mandatory terms in order to conclude that a municipality has acted. A policy may be framed in permissive language: if X, one may then do A, B, or C. An employee pursuing any of these options would still be taking an action linked to a deliberate choice of the municipality, even if no single option was mandated.[8]

---

[8] This conclusion is consistent with the Sixth Circuit's application of *Monell* and its progeny in *Garner v Memphis Police Dep't*, 8 F3d 358 (CA 6, 1993). In *Garner*, the defendants had a written policy that authorized, but did not require, the use of deadly force to stop certain nonviolent fleeing suspects. *Id*. at 364. Because the defendants could have adopted a more restrictive deadly force policy, their authorization of the use

11

The Court of Appeals in this case concluded that a municipality may not be held liable unless its policy or custom specifically directed its employees to violate a person's constitutional rights. We disagree. Authorizing or sanctioning specific conduct is also a deliberate choice of a municipality that may give rise to liability. To hold otherwise would allow a municipality to escape liability merely by reframing an obligatory policy in permissive or discretionary terms. At a practical level, it would let municipalities avoid liability for the use of unconstitutional police tactics by adopting the tactics, but stating that they are not mandatory. This would elevate form over substance in a manner that would ignore the culpability attributable to a municipality as a result of its authorization of the tactics in the first instance. Cf. *Monell*, 436 US at 691-692. We do not believe that 42 USC 1983 and the controlling caselaw permit such a loophole. Accordingly, we hold that a policy or custom that authorizes municipal employees to perform their duties in a particular manner represents a deliberate decision of the municipality and an employee's performance of his or her duties in the manner authorized may be considered acts of the municipality.

## B. CAUSATION

Once a municipal policy or custom has been identified, a plaintiff must then show that the policy or custom was also the "moving force" behind the action that gave rise to

---

of deadly force to apprehend some nonviolent suspects was "a deliberate choice from among various alternatives," which made that authorization a policy with the force of law. *Id*. Similarly, the United States Court of Appeals for the Second Circuit has said that if a city "impliedly or tacitly authorized, approved or encouraged harassment" of the plaintiff by the police, then "it promulgated an official policy within the meaning of *Monell*." *Turpin v Mailet*, 619 F2d 196, 201 (CA 2, 1980).

the alleged constitutional violation. *Monell*, 436 US at 694. In other words, the policy or custom must be the cause of the violation. The causation element of claims made under 42 USC 1983 should generally "be read against the background of tort liability that makes a man responsible for the natural consequences of his actions." *Monroe v Pape*, 365 US 167, 187; 81 S Ct 473; 5 L Ed 2d 492 (1961), overruled in part on other grounds by *Monell*, 436 US 658. Accordingly, "[t]raditional tort concepts of causation" inform our analysis. *Powers v Hamilton Co Pub Defender Comm*, 501 F3d 592, 608 (CA 6, 2007).

As in a tort action, determining whether causation can be established requires a two-pronged inquiry. A plaintiff must show cause in fact and proximate causation, also known as legal causation. *Skinner v Square D Co*, 445 Mich 153, 162-163; 516 NW2d 475 (1994). The cause in fact element requires proof that " 'but for' the defendant's actions, the plaintiff's injury would not have occurred." *Id*. at 163. Determining proximate causation requires an examination of the foreseeability of consequences and of whether a defendant should be held legally responsible for the consequences of the defendant's conduct. *Id*. Thus, to establish a genuine issue of material fact, a plaintiff must point to facts from which a person could reasonably infer that the municipality's policy or custom was the cause in fact and the proximate cause of the alleged constitutional violation. See, e.g., *Tsao v Desert Palace, Inc*, 698 F3d 1128, 1146 (CA 9, 2012) ("Under *Monell*, a plaintiff must also show that the policy at issue was the 'actionable cause' of the constitutional violation, which requires showing both but for and proximate causation."), quoting *Harper v Los Angeles*, 533 F3d 1010, 1026 (CA 9, 2008); *Bielevicz v Dubinon*, 915 F2d 845, 850 (CA 3, 1990) ("A plaintiff bears the

13

additional burden of proving that the municipal practice was the proximate cause of the injuries suffered.").

Evidence "that the action taken or directed by the municipality or its authorized decisionmaker itself violates federal law" establishes that "the municipal action was the moving force behind the injury . . . ." *Brown*, 520 US at 405. Stated differently, when an employee acts in accordance with a policy or custom that itself authorizes unconstitutional conduct, the policy or custom is the cause of the constitutional injury. It follows that a municipal employee's actions also flow directly from the municipality when those actions are carried out in the manner that the municipality has previously authorized. Accordingly, a municipal policy or custom is the cause in fact and proximate cause of a constitutional violation if the municipality *authorizes*, but does not necessarily require, the specific conduct that constitutes the violation and its employee acted pursuant to that authorization.[9]

---

[9] This standard has been consistently applied by federal circuit courts. In *Garner*, 8 F3d at 364-365, for example, police officers were authorized, but not required, to shoot nonviolent fleeing suspects by the department's deadly force policy. The Sixth Circuit found that when an officer acted pursuant to that authorization and training, the policy was the cause of the decision to use such force as a matter of law. *Id*. at 365. In *O'Brien*, 23 F3d at 1005 (opinion by Joiner, J.), the Sixth Circuit held that causation was established by the execution of the city's critical incident response plan, which implicitly authorized warrantless entries into homes during critical incidents. The United States Court of Appeals for the Tenth Circuit has similarly stated, "[w]hen employees take actions specifically authorized by policy or custom, their actions can be fairly said to be the municipality's." *Simmons v Uintah Health Care Special Serv Dist*, 506 F3d 1281, 1284 (CA 10, 2007). The United States Court of Appeals for the Fourth Circuit has gone so far as to say that independent proof of causation is unnecessary when the conduct authorized is itself unconstitutional. See *Spell v McDaniel*, 824 F2d 1380, 1387 (CA 4, 1987) ("When a municipal 'policy or custom' is itself unconstitutional, i.e., when it directly commands or authorizes constitutional violations, *see, e.g.*, *Monell*, . . . the causal

14

Contrary to the Court of Appeals' holding, federal caselaw suggests that a policy or custom that gives municipal employees some discretion does not per se sever the causal link. For example, in *Garner v Memphis Police Dep't*, 8 F3d 358, 364 (CA 6, 1993), the defendants' deadly force policy did not require police officers to use deadly force to stop fleeing suspects. However, the deadly force policy was still found to be the "moving force" behind an officer's actions when the officer had been taught that it was "proper to shoot a fleeing burglary suspect in order to prevent escape" and the officer had acted pursuant to that policy. *Id*. at 364-365. Similarly, in *O'Brien*, 23 F3d at 1001, officers maintained the ultimate discretion to determine when a search warrant was necessary in a specific instance. However, when officers followed "the routine practice of not securing warrants during the management of critical incidents," it could be inferred that the policy giving rise to the practice was the moving force behind the alleged constitutional violation. *Id*. at 1004 (opinion by Joiner, J.). In *Chew v Gates*, 27 F3d 1432, 1444 (CA 9, 1994), the defendants had a policy authorizing the use of dogs to find and seize *all* concealed suspects. The officer in *Chew* released a dog because the officer had been informed that he was authorized to do so under the circumstances. *Id*. at 1445. The officer's exercise of discretion in releasing the dog did not break the causal chain where city policy had authorized him to do so. *Id*. at 1446.

As previously stated, when a municipality has approved of specific discretionary employee conduct and an employee acts accordingly, those actions are attributable to the

_____

connection between policy and violation is manifest and does not require independent proof.").

15

municipality.  It follows that, when a policy or custom authorizes specific tactics and the municipality instructs its employees regarding the use of those tactics, then that policy or custom is the cause in fact of an employee's subsequent use of those tactics.  And when the tactics themselves are illegal, subsequent violations of the law arising from an employee's use of the tactics are foreseeable and flow directly from the municipality's policy or custom.  Accordingly, if a policy or custom authorizes the use of a specific tactic and a police officer acts in accordance with that authorization, then the policy or custom is the cause in fact and the proximate cause of a constitutional violation arising from the use of that tactic.

## IV.  APPLICATION

Turning to the cases before us, we hold that the Court of Appeals erred by holding that plaintiffs failed to establish a genuine issue of material fact with regard to the existence of a municipal policy or custom and with regard to causation.

## A.  MUNICIPAL POLICY OR CUSTOM

We begin by noting that the City conceded during oral arguments that there is a custom within the GRPD of performing P&Ps during field interrogations and stops.  The City's briefs also contain numerous references to its "P&P Custom."  On the basis of these concessions alone, we conclude that the City has a practice of performing P&Ps during field interrogations and stops and that the practice legally constitutes a governmental custom within the meaning of *Monell*.  Additionally, the City's response to a request for admission described its P&P practices as follows:

> . . . Defendant City admits that officers taking photos and thumbprints of individuals *is a custom or practice of the City of Grand*

16

*Rapids* and has been for decades. The custom or practice has changed over those years with the evolution of technology. . . . A photograph and print might be taken of an individual when the individual does not have identification on them and the officer is in the course of writing a civil infraction or appearance ticket. *A photograph and print might be taken in the course of a field interrogation or a stop if appropriate based on the facts and circumstance of that incident.* [Emphasis added.]

Facts admitted in response to a request for admission are "conclusively established unless the court on motion permits withdrawal or amendment of an admission." MCR 2.312(D). It is also undisputed that GRPD officers are not required to make a probable cause determination before performing a P&P. Thus, the City's admission conclusively established both the existence and the City's knowledge of a longstanding "custom or practice" of performing P&Ps "in the course of a field interrogation or a stop if appropriate based on the facts and circumstances of that incident."

Even without the City's concessions, we find that the evidence, when viewed in the light most favorable to plaintiffs, is sufficient for reasonable minds to differ as to the existence of an official policy authorizing the allegedly unconstitutional conduct. First, the GRPD's Officer Training Tasks manual indicates the existence of an official policy. The manual states that P&Ps are *mandatory* for the issuance of a citation for driving without a license or with a suspended license if the subject has no identification. Outside of the traffic citation context, the manual lists a P&P as something to be included in a field interrogation report and lists "[p]icture and print procedures" under the heading "TRAINING CONSIDERATIONS" without further explanation. Also in the record are slides from a GRPD training presentation showing a model field interrogation report, which includes a photograph and a fingerprint card, to record the results of a P&P. Other slides contain hypothetical examples where a P&P was performed on individuals that

17

officers suspected of criminal activity, though the officers lacked enough information to support an arrest. This suggests that officers were specifically instructed that it was permissible to perform a P&P during field interrogations when there was not probable cause to make an arrest.

Deposition testimony further suggests the existence of an official policy. VanderKooi testified at his deposition that the P&P procedures have been in place since he joined the GRPD in 1980. When asked what GRPD policies authorize a P&P, VanderKooi explained that the GRPD's field interrogation procedures "state[] that you can take a P and P, meaning photograph and print, under circumstances where you're engaged in a contact or stop or detained somebody[;] . . . it outlines the guidelines for taking pictures and prints, as well as writing police reports." He also testified that taking a person's fingerprints is "a common investigative tactic to either incriminate or eliminate" suspicion. In Johnson's case, Bargas testified that the P&P he performed was in accordance with GRPD policy. In Harrison's case, LaBrecque testified that he was called to the location specifically to perform a P&P, which he did, despite the fact that VanderKooi apparently requested only Harrison's photograph. The officers' testimony demonstrates that they treated the GRPD's P&P procedure as an official policy.

The existence of an official policy is additionally supported by the reasonable inference that public resources were used both to develop the training materials discussed earlier and also to train officers. The GRPD is the law enforcement branch of the City, and it is funded by tax revenue that the City allocates for law enforcement purposes. Thus, the GRPD's training materials regarding its P&P procedures were funded by money from the City's coffers. This is analogous to the use of municipal resources in

18

*O'Brien*, 23 F3d at 1005 (opinion by Joiner, J.), to hire an outside consultant, hold training sessions, and develop written manuals for a critical incident response plan. Although developing the P&P procedures may have required fewer resources than the response plan in *O'Brien*, the City nonetheless dedicated money and personnel to develop and implement the P&P procedure, and therefore, a reasonable person could infer that the City made a deliberate choice to authorize the use of P&Ps during field interrogations.

The evidence thus supports plaintiffs' theory that there was an official P&P policy, i.e., a "fixed plan[] of action to be followed under similar circumstances consistently and over time." *Pembaur*, 475 US at 480-481. That the City may not have outlined in its training materials what specific facts and circumstances justify performing a P&P does not preclude a juror from inferring that the custom has, over time, evolved into an official policy within the meaning of *Monell*. Therefore, even without the City's concession, there are genuine issues of material fact regarding the existence of an official municipal policy.

## B. CAUSATION

As the party opposing summary disposition, plaintiffs bear the burden of demonstrating that reasonable minds could differ about whether the P&P policy or custom was the moving force behind the alleged Fourth Amendment violations. Plaintiffs argued that performing a P&P without first making a probable cause determination violated their constitutional rights. According to plaintiffs, the City's policy is to authorize and train GRPD officers to perform a P&P without first establishing probable cause. In other words, plaintiffs allege that an affirmative municipal action, the

19

execution of the alleged P&P policy, violates federal law. As stated in *Brown*, 520 US at 405, proof "that the action taken or directed by the municipality . . . itself violates federal law will also determine that the municipal action was the moving force behind the injury" complained of. Thus, if the City's policy or custom is unconstitutional, *Brown* states that causation can be inferred.

The constitutionality of the City's policy or custom has yet to be determined. However, we find that the tort concepts of cause in fact and proximate causation demonstrate that the evidence permits a reasonable inference that the City's P&P policy or custom was the moving force behind the alleged Fourth Amendment violations. First, the City appears to have conceded that the policy or custom was the cause in fact of any alleged constitutional violations.[10] Additionally, circumstantial evidence indicates as much. See *Skinner*, 445 Mich 164 ("[A] plaintiff's circumstantial proof must facilitate reasonable inferences of causation, not mere speculation."). Bargas agreed that when he performed a P&P on Johnson, it was in accordance with GRPD policies. VanderKooi testified that he wanted a P&P of Harrison to preserve Harrison's identity, which is a primary reason the P&P tactic is used during field interrogations. The training slides and the GRPD manual previously discussed indicate that officers were instructed to use P&Ps

---

[10] The City stated the following in its supplemental brief filed in this Court:

> The City may freely concede that in the absence of the Field Interrogation P&P Custom, Appellants would not have had their pictures or prints taken during their respective investigatory stops. But . . . even if having their pictures and prints taken during a lawful stop somehow violated their constitutional rights, the Custom itself was *not* the moving force behind those violations.

during field interrogations. Additionally, the City has not argued that the officers in these cases were acting contrary to their training or GRPD policies. In the absence of evidence to the contrary, we think it more reasonable to infer that the officers performed the P&Ps in accordance with their prior training than to infer that the officers acted spontaneously. Thus, a reasonable person could infer that the City's P&P policy or custom was the cause in fact of the alleged Fourth Amendment violations.

Turning to proximate causation, we must consider whether the injury alleged was a foreseeable consequence of the City's policy or custom. See *id*. at 163. More specifically, was it reasonably foreseeable that performing a P&P in accordance with the alleged policy or custom would result in a Fourth Amendment violation? We have no difficulty concluding that the answer is yes.

No party has argued that the officers here did anything other than follow the City's P&P policy or custom. The record shows that GRPD officers were, at a minimum, authorized and trained to perform P&Ps during any field interrogation or stop in which an officer believed a P&P was appropriate. It is reasonably foreseeable that when a police department authorizes and trains its officers to use a specific investigative tactic, the officers will follow that training. While the City suggests that officers must consider the facts and circumstances of each encounter, there is no indication that the officers were instructed that probable cause of criminal conduct was a prerequisite to performing a P&P. The potential problem for the City is that performing a P&P without probable cause might violate a person's Fourth Amendment rights. US Const, Am IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ."). If the nonconsensual

21

fingerprinting of a person without probable cause is unconstitutional, then the execution of the P&P policy authorizing such conduct would result in a constitutional violation. This is sufficient to show that reasonable minds could differ as to proximate causation.

## V. RESPONSE TO THE CONCURRENCE

The concurring opinion argues that whenever a 42 USC 1983 plaintiff alleges that that the execution of a facially lawful policy or custom caused his or her injury the claim must be reviewed pursuant to the deliberate indifference standard. We find it unnecessary to adopt or reject that interpretation of the controlling Supreme Court cases. Rather, we think it sufficient for a reviewing court to determine whether the plaintiff claims that the alleged injury was caused by a municipal action that itself directed or authorized the violation of a federally protected right or whether the plaintiff claims that a municipality's inaction or omission caused municipal employees to violate the plaintiff's rights. We agree with the concurrence that if the theory of liability is premised on some variant of the latter, then the plaintiff must also show deliberate indifference to prevail.

No one disputes that we are bound to follow the decisions of the Supreme Court on matters of federal law. *Abela v Gen Motors Corp*, 469 Mich 603, 606; 677 NW2d 325 (2004). The United States Supreme Court held in *Canton*, 489 US at 388, "that the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." The Supreme Court acknowledged that the training program in *Canton* was lawful, and the Court's analysis focused on the narrow issue of whether a policy of inaction (i.e., the failure to train) could serve as a basis for liability. The

phrases "facially constitutional" or "facially lawful" are noticeably absent from that opinion. And in *Brown*, 520 US at 415-416, the Supreme Court held that the county was not liable for the sheriff's isolated decision to hire a deputy without adequate screening, because the respondent had not shown that the sheriff's decision "reflected a conscious disregard for a high risk that [the deputy] would use excessive force in violation of respondent's federally protected right." The *Brown* Court, 520 US at 407, added the "facially lawful" language to its *restatement* of *Canton*'s holding, but it did not expressly rule that the deliberate indifference standard applies in every case in which a plaintiff argues that the execution of a facially lawful policy or custom caused his or her injury.[11] Instead, the Supreme Court merely said that "[c]laims not involving an allegation that the municipal action itself violated federal law, or directed or authorized the deprivation of federal rights, present much more difficult problems of proof," and that such claims require a showing of deliberate indifference. *Id*. at 406-407. See also *Connick v Thompson*, 563 US 51, 60-61; 131 S Ct 1350; 179 L Ed 2d 417 (2011) (evaluating under the deliberate indifference standard a theory of liability based on a municipality's decision not to provide training on a specific topic to certain employees). When a theory of liability is based on the *absence* of governmental action, it makes sense to more critically scrutinize claims of governmental culpability for that absence. But the Supreme Court has never explicitly required such critical scrutiny when the government

---

[11] Indeed, the Supreme Court was silent as to whether *Canton* or *Brown* created such a rule in its more recent decision in *Connick v Thompson*, 563 US 51; 131 S Ct 1350; 179 L Ed 2d (2011), which also involved a municipal liability claim premised on an alleged failure to train government employees.

23

specifically and affirmatively authorized, but did not require, its employees to engage in allegedly unlawful conduct.[12]

In this case, we have an allegation that a municipal action *did* authorize a deprivation of federal rights. Plaintiffs aver that a policy or custom affirmatively authorized the use of a specific investigative tactic during field interrogations and that GRPD officers were trained to believe that it was appropriate to use this tactic in the absence of probable cause. Under plaintiffs' theory, the municipality affirmatively authorized the precise conduct alleged to be unlawful and implemented its policy through the GRPD's training of officers to use a P&P in the manner that is alleged to be unconstitutional. Thus, whether plaintiffs specifically claim that the P&P policy is itself facially unconstitutional is beside the point for the purposes of determining whether the Court of Appeals erred, because the policy or custom identified by plaintiffs represents a municipal action that *itself* "authorized" allegedly unconstitutional conduct. See *Brown*,

---

[12] The concurrence cites decisions in which *Canton* and *Brown* have been interpreted as requiring application of the deliberate indifference standard in 42 USC 1983 cases involving an alleged injury arising from the execution of a facially lawful policy or custom. At least one federal circuit court has declined to adopt this interpretation. See *Christensen v Park City Muni Corp*, 554 F3d 1271, 1280 (CA 10, 2009) ("If a governmental entity makes and enforces a law that is unconstitutional as applied, it may be subject to liability under § 1983."). It also appears, for reasons that are not readily apparent, that several other federal appellate courts have not addressed the issue or have not found it necessary to expand on *Canton* and *Brown* in the manner that is suggested by the concurrence. See, e.g., *Cash v Co of Erie*, 654 F3d 324, 333-334 (CA 2, 2011); *Jenkins v Bartlett*, 487 F3d 482, 492 (CA 7, 2007); *Young v Providence*, 404 F3d 4, 25-28 (CA 1, 2005); *Daskalea v District of Columbia*, 343 US App DC 261, 269; 227 F3d 433 (2000). Beyond our belief that it is not necessary at this time to adopt or reject the concurring opinion's interpretation of *Canton* and *Brown*, we offer no further opinion as to the merits of the concurrence's position on that issue.

520 US at 406-407.[13]  "Where a plaintiff claims that a particular municipal action *itself* violates federal law, or directs an employee to do so, resolving these issues of fault and causation is straightforward."  *Brown*, 520 US at 404-405.  "[T]he conclusion that the action taken or directed by the municipality . . . itself violates federal law will also determine that the municipal action was the moving force behind the injury of which the plaintiff complains."  *Id*. at 405.  Thus, this is a "straightforward" case more akin to *Monell* and *Pembaur* than *Brown* or *Canton*.  See *id*. at 404-405.

We took this case to decide only whether any alleged violation of the plaintiffs' constitutional rights was the result of a policy or custom instituted or executed by the City.  Having concluded that the Court of Appeals erred by ruling against plaintiffs on this issue, it is unnecessary at this time for us to reach the additional issue addressed by the concurring opinion.[14]

---

[13] As the concurrence acknowledges, in this Court, plaintiffs have declined to argue in the alternative that the GRPD officers inflicted the alleged constitutional injury because of some policy or custom of inaction or omission on the part of the City.

[14] Our opinion should not be read as implying that whether the policy or custom identified by plaintiffs is facially constitutional or facially unconstitutional is irrelevant to this case as a whole.  The Court of Appeals has yet to determine whether a constitutional violation occurred, much less whether the City's policy or custom is facially unconstitutional, because it erroneously concluded that no such policy or custom existed.  The concurring justices appear eager to indicate how they would decide certain issues that could arise on remand, and what law they would adopt in such circumstances.  We merely prefer to wait until those issues are properly presented to us before we opine on the subject further.

## VI. CONCLUSION

In summary, we hold that it has been conclusively established by the City's concession that there exists a custom of performing a P&P during a field interrogation when an officer deems it appropriate. We further hold that, even without the City's concession as to the existence of a custom, the City's admissions, the officers' testimony, the GRPD manual, and the training materials, when viewed in the light most favorable to plaintiffs, are sufficient to create a genuine issue of material fact as to whether the City's custom has become an official policy. Genuine issues of material fact also remain concerning causation. Therefore, the Court of Appeals erred by affirming the trial court's order granting summary disposition based on the Court's conclusion that the alleged constitutional violations were not the result of a policy or custom of the City. We express no opinion with regard to whether plaintiffs' Fourth Amendment rights were violated. Therefore, we reverse Part III of the Court of Appeals' opinion in both cases. We remand these cases to the Court of Appeals to determine whether the P&Ps at issue here violated plaintiffs' Fourth Amendment right to be free from unreasonable searches and seizures.

Richard H. Bernstein
Bridget M. McCormack
David F. Viviano
Elizabeth T. Clement

26

STATE OF MICHIGAN

SUPREME COURT

DENISHIO JOHNSON,

       Plaintiff-Appellant,

v

No. 156057

CURTIS VANDERKOOI, ELLIOTT
BARGAS, and CITY OF GRAND RAPIDS,

       Defendants-Appellees.

_____

KEYON HARRISON,

       Plaintiff-Appellant,

v

No. 156058

CURTIS VANDERKOOI and CITY OF
GRAND RAPIDS,

       Defendants-Appellees.

_____

WILDER, J. (*concurring in judgment*).

I concur in the result reached by the majority. I write separately to fully explain the basis of my concurrence, including my understanding of the majority's holdings and the inquiry facing the Court of Appeals on remand. In my judgment, the majority opinion gives insufficient guidance to the bench and the bar concerning the state of the law governing municipal liability. I believe that we owe future § 1983 plaintiffs, who have suffered harm at the hands of a local government unit, and defendants, who need to understand the legal requirements governing their behavior, a thorough understanding of

what they must demonstrate in order to prevail. At the same time, we are also obligated to give the clearest guidance possible to lower courts, so that they may adjudicate such claims as fairly as possible.

I

This case involves the proper application of § 1 of the Ku Klux Klan Act of 1871, now codified as 42 USC 1983. Section 1983 states, in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

The United States Supreme Court has long held that this statute provides a cause of action for those claiming the deprivation of a federal right by a "person" acting under the authority of state law. *Monroe v Pape*, 365 US 167, 171-187; 81 S Ct 473; 5 L Ed 2d 492 (1961), overruled in part on other grounds by *Monell v Dep't of Social Servs of the City of New York*, 436 US 658; 98 S Ct 2018; 56 L Ed 2d 611 (1978).

In *Monell*, the Court held that a local unit of government was a "person" within the meaning of § 1983 and, as such, could be sued under the statute. *Monell*, 436 US at 690. Yet the Court also ruled that the law's text and history compelled the further conclusion that "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Id*. at 691. In other words, there was no respondeat superior liability under § 1983; a municipality could not be held to account solely because it employed a tortfeasor. *Id*. In order to distinguish between an injury exacted solely by an employee and one attributable

2

to the municipality, the Court concluded that "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id*. at 694.

*Monell* admittedly sketched the contours of municipal liability broadly. *Id*. at 695. And it was not until later that the Court refined the scope of municipal liability in *Pembaur v Cincinnati*, 475 US 469, 471; 106 S Ct 1292; 89 L Ed 2d 452 (1986). There, the Court examined whether a conscious decision by a municipal policymaker on a single occasion could constitute an official policy for the purposes of *Monell* liability. The Court answered yes, making it clear that *Monell* was, after all, a case about the allocation of responsibility. *Id*. at 475. *Monell*'s "policy or custom" requirement was "intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Id*. at 479-480. As a logical corollary, liability could attach on the basis of a policymaker's single decision. All that mattered was that the decision was made by an official " 'whose acts or edicts may fairly be said to represent official policy.' " *Id*. at 480, quoting *Monell*, 436 US at 694. This was true regardless of whether the policymaker's decision "officially sanctioned" or otherwise "ordered" the conduct. *Pembaur*, 475 US at 480. In either case, the policymaker's decision represented "a

deliberate choice" on behalf of the municipality to follow a particular course of action. *Id*. at 483 (opinion of Brennan, J.).[1]

*Monell* and *Pembaur* make it clear that "municipal liability is limited to action for which the municipality is actually responsible." *Id*. at 479-480 (opinion of the Court). Furthermore, liability premised on anything less than " 'acts or edicts [that] may fairly be said to represent official policy' " amounts to legal responsibility premised solely on a respondeat superior theory. *Id*. at 480, quoting *Monell*, 436 US at 694. But since municipalities can only act through living persons, identifying conduct properly attributable to the municipality, in contrast to conduct that is actually the fault of an employee, presents a hard conceptual problem. *Monell* and *Pembaur* were, in fact, easy cases. They involved deliberate, unlawful action on behalf of municipal policymakers. *Monell* represents the situation in which local government officials have chosen to promulgate and implement an unconstitutional directive. In that type of case, the connection between culpable municipal conduct and eventual injury is relatively clear, even though municipal employees are usually responsible for carrying out the unlawful order. Similarly, *Pembaur* embodies the situation in which a municipal policymaker has, himself or herself, chosen to violate federal law. The implementation of this unlawful decision is subsumed by the initial choice to pursue that course of action. So again, the connection between culpable municipal conduct and eventual injury is readily apparent.

---

[1] Justice Brennan authored the opinion of the Court in *Pembaur*, but only three justices joined Part II(B) of that opinion, *id*. at 481-484.

In *City of Canton, Ohio v Harris*, 489 US 378, 380; 109 S Ct 1197; 103 L Ed 2d 412 (1989), the United States Supreme Court addressed a harder question: whether a municipality could be liable based on its failure to act rather than its affirmative conduct. More specifically, *Canton* asked whether a failure to adequately train municipal employees could ever form the basis of *Monell* liability. *Canton* explained that a municipal policy did not have to be unconstitutional, in and of itself, to implicate *Monell*. *Id*. at 387. But the fact that an employee happened to apply a lawful policy in an unconstitutional manner could not, without more, give rise to municipal liability. *Id*. "[F]or liability would then rest [solely] on [a] respondeat superior" theory. *Id*. Accordingly, in the absence of apparent deliberate conduct, there had to be a degree of fault sufficient to infer that the municipality's inaction represented a conscious decision. *Id*. at 389. Reviewing a range of options, the Court held that inadequate training "may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of [those affected]." *Id*. at 388. In the Court's view, this was consistent with the underlying thrust of *Monell* that "[o]nly where a failure to [act] reflects a 'deliberate' or 'conscious' choice by a municipality . . . can a city be liable." *Id*. at 389.[2]

---

[2] Although not binding on this Court, a number of federal appellate courts have since held that a municipality cannot be deliberately indifferent to a plaintiff's constitutional rights if those rights were not clearly established when the policy or custom was promulgated. See, e.g., *Arrington-Bey v City of Bedford Hts, Ohio*, 858 F3d 988, 994 (CA 6, 2017) (" '[A] municipal policymaker cannot exhibit fault rising to the level of *deliberate* indifference to a constitutional right when that right has not yet been clearly established.' "), quoting *Hagans v Franklin Co Sheriff's Office*, 695 F3d 505, 511 (CA 6,

*Canton*'s deliberate indifference standard was interpreted by lower federal courts to apply whenever a plaintiff alleged that a federal right was violated pursuant to a policy that was facially lawful. *Gonzalez v Ysleta Indep Sch Dist*, 996 F2d 745, 757-758 (CA 5, 1993) (reviewing decisions from various federal circuits concluding that *Canton* applied whenever a plaintiff claimed that a facially constitutional policy was applied unlawfully by a municipal employee).[3] This is understandable. If *Monell* and *Pembaur* were easy cases because the line between culpable municipal conduct and injury was clear, an allegation that a municipality has failed to prevent its employees from unlawfully executing an otherwise valid policy presents no such obvious line of accountability. For *Monell* purposes, the important question remains whether such a failure to act may constitute a deliberate attempt to commit a constitutional injury. On one side of that line

---

2012); *Szabla v City of Brooklyn Park, Minnesota*, 486 F3d 385, 393 (CA 8, 2007) (en banc) ("[W]e agree with the Second Circuit and several district courts that a municipal policymaker cannot exhibit fault rising to the level of *deliberate* indifference to a constitutional right when that right has not yet been clearly established."), citing *Townes v City of New York*, 176 F3d 138, 143-144 (CA 2, 1999); *Gonzalez v Ysleta Indep Sch Dist*, 996 F2d 745, 759-760 (CA 5, 1993) (stating that a "municipality only can be held liable for a constitutional violation caused by a municipality that manifests at least deliberate indifference to constitutional rights" and that "it may well be . . . that to be deliberately indifferent to rights requires that those rights be clearly established") (quotation marks and citations omitted); *Williamson v City of Virginia Beach, Virginia*, 786 F Supp 1238, 1264-1265 (ED Va, 1992) ("[Even if] the constitutional rights alleged by plaintiff did exist, the conclusion that they were not clearly established negates the proposition that the city acted with deliberate indifference."), aff'd 991 F2d 793 (CA 4, 1993) (Table).

[3] A law is facially unconstitutional if "no set of circumstances exists under which the Act would be valid." *United States v Salerno*, 481 US 739, 745; 107 S Ct 2095; 95 L Ed 2d 697 (1987).

lies municipal liability; on the other lies vicarious liability for the acts of employees. When viewed in this light, *Canton*'s deliberate indifference standard is simply the functional equivalent of the culpable conduct that setting an unlawful policy presupposes. It is clear from this that a municipality can only be liable for failing to prevent its employees from unconstitutionally implementing a constitutional policy if the municipality was deliberately indifferent to the risk of harm that would follow. That is, only under these circumstances is the failure to act synonymous with a "deliberate," or "conscious," unlawful choice on behalf of the municipality.

The United States Supreme Court later confirmed this understanding of *Canton*. In *Bd of the Co Comm'rs of Bryan Co, Oklahoma v Brown*, 520 US 397, 402; 117 S Ct 1382; 137 L Ed 2d 626 (1997), the Court addressed the question of whether a single hiring decision by a policymaker could be a "policy" that triggered municipal liability. The Court held that it could, in limited circumstances. And in coming to that conclusion, the Court summarized the import of its *Monell* jurisprudence:

> Where a plaintiff claims that a particular municipal action *itself* violates federal law, or directs an employee to do so, resolving these issues of fault and causation is straightforward. . . . [P]roof that a municipality's legislative body or authorized decisionmaker has intentionally deprived a plaintiff of a federally protected right necessarily establishes that the municipality acted culpably. Similarly, the conclusion that the action taken or directed by the municipality or its authorized decisionmaker itself violates federal law will also determine that the municipal action was the moving force behind the injury of which the plaintiff complains. . . .
>
> \* \* \*
>
> [But c]laims not involving an allegation that the municipal action itself violated federal law, or directed or authorized the deprivation of federal rights, present much more difficult problems of proof. That a plaintiff has suffered a deprivation of federal rights at the hands of a municipal employee will not alone permit an inference of municipal

culpability and causation; the plaintiff will simply have shown that the *employee* acted culpably. We recognized these difficulties in *Canton* v. *Harris* . . . . [A] plaintiff seeking to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate a plaintiff's rights must demonstrate that the municipal action was taken with "deliberate indifference" as to its known or obvious consequences. A showing of simple or even heightened negligence will not suffice. [*Id*. at 404-405, 406-407 (citations omitted).]

According to the *Brown* Court, this legal framework reflected the rigorous standards of culpability and causation necessary to prevent municipal liability from collapsing into respondeat superior. *Id*. at 410. Anything less would ignore what was recognized in *Monell* and repeatedly affirmed: "Congress did not intend municipalities to be held liable unless *deliberate* action attributable to the municipality directly caused a deprivation of federal rights." *Id*. at 415.

This Court is bound by the decisions of the United States Supreme Court on matters of federal law. *Abela v Gen Motors Corp*, 469 Mich 603, 606; 677 NW2d 325 (2004). And municipal liability under § 1983, a federal statute, undoubtedly constitutes such a matter. Accordingly, I believe that this Court is compelled to conclude the following: if a § 1983 plaintiff alleges that a municipal policy or custom is facially *unlawful*, he or she need only show that the policy existed and that its implementation caused the violation of his or her federal rights. But if a § 1983 plaintiff alleges that a municipal policy or custom is facially *lawful*, he or she must show not only that the policy existed and that its execution caused the violation of his or her federal rights, but also that the municipality was deliberately indifferent to the unlawful way in which that policy was implemented. Only then can it be said that a municipality has made a

"deliberate or conscious choice" to direct or sanction unconstitutional conduct. *Pembaur*, 475 US at 483 (opinion of Brennan, J.).[4]

---

[4] Although it does not control this Court's decision, this understanding of municipal liability under § 1983 is supported by an overwhelming majority of other jurisdictions. See, e.g., *Szabla v City of Brooklyn Park, Minnesota*, 486 F3d 385, 390 (CA 8, 2007) (en banc) ("Where a policy is constitutional on its face, but it is asserted that a municipality should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by policymakers."); *Kelly v Borough of Carlisle*, 622 F3d 248, 264 (CA 3, 2010) ("[I]n order to be held liable for a facially valid policy, [a] municipality must have acted with deliberate indifference."); *Gregory v City of Louisville*, 444 F3d 725, 752 (CA 6, 2006) ("Where the identified policy is itself facially lawful, the plaintiff must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences.") (quotation marks and citation omitted); *American Federation of Labor & Congress of Indus Organizations v City of Miami, FL*, 637 F3d 1178, 1187 (CA 11, 2011) ("If a facially-lawful municipal action is alleged to have caused a municipal employee to violate a plaintiff's constitutional rights, the plaintiff must establish that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences. As none of the policies in question here are facially unconstitutional, this presents the plaintiffs with a difficult task.") (quotation marks and citation omitted); *Burge v St Tammany Parish*, 336 F3d 363, 370 (CA 5, 2003) ("Where . . . an alleged policy or custom is facially innocuous, establishing the requisite official knowledge requires that a plaintiff establish that an official policy was promulgated with deliberate indifference to the 'known or obvious consequences' that constitutional violations would result.") (quotation marks and citation omitted); *Gibson v Co of Washoe, Nevada*, 290 F3d 1175, 1186 (CA 9, 2002) ("[A] plaintiff can allege that through its *omissions* the municipality is responsible for a constitutional violation committed by one of its employees, even though the municipality's policies were facially constitutional, the municipality did not direct the employee to take the unconstitutional action, and the municipality did not have the state of mind required to prove the underlying violation. However, because *Monell* held that a municipality may not be held liable under a theory of respondeat superior, a plaintiff must show that the municipality's deliberate indifference led to its omission and that the omission caused the employee to commit the constitutional violation.") (citation omitted), overruled on other grounds by *Castro v Co of Los Angeles*, 833 F3d 1060 (CA 9, 2016); *Elkins v McKenzie*, 865 So 2d 1065, 1074 (Miss, 2003) ("While an unconstitutional official policy renders a municipality culpable under § 1983, even a facially innocuous

In this case, plaintiffs have gone to some length to argue in their briefing and during oral argument that the deliberate indifference standard does not apply to this particular controversy.[5]  Therefore, because I agree with the majority that plaintiffs claim that the Grand Rapids Police Department had a policy or custom of completing "P&Ps"[6] during field interrogations without probable cause and that this policy caused the violation of plaintiffs' constitutional rights, in my view, under the principles just discussed, plaintiffs must eventually show not only that the complained-of municipal policy existed and that its execution by Grand Rapids Police Department officers caused

---

policy will support liability if it was promulgated with deliberate indifference to the known or obvious consequences that constitutional violations would result.") (quotation marks and citation omitted); *Peak Alarm Co, Inc v Salt Lake City Corp*, 243 P3d 1221, 1247 (Utah, 2010) ("A plaintiff may attack a municipal policy or custom in two ways.  A plaintiff may attempt a facial attack on the local government's policy, alleging the policy itself is a violation of federal law.  Alternatively, a plaintiff may saddle a municipality with § 1983 liability despite facially valid policies and customs by demonstrating 'deliberate indifference' on the part of the local government.") (citations omitted); *Democracy Coalition v City of Austin*, 141 SW3d 282, 290 (Tex App, 2004) ("To subject a municipality to section 1983 liability, a 'policy' must either be *per se* unconstitutional ('facially unconstitutional') or promulgated in deliberate indifference to the 'known or obvious consequences' that constitutional violations would result (a 'facially innocuous policy').") (citation omitted).  But see *Christensen v Park City Muni Corp*, 554 F3d 1271, 1280 (CA 10, 2009) ("If a governmental entity makes and enforces a law that is unconstitutional as applied, it may be subject to liability under § 1983.").

[5] Plaintiffs stated in their appellate brief that the municipality's failure to act was not at issue in this case.  Plaintiffs' reply brief stated that the deliberate indifference standard was inapplicable.  And in oral argument, plaintiffs explicitly disavowed the need to demonstrate deliberate indifference.

[6] "P&P" means "photograph and print."  It refers to the process, performed in the field, of photographing and fingerprinting individuals who have been detained by police officers.

their constitutional injuries, but also that the policy or custom was facially unconstitutional.

II

The majority suggests that in this case it is unnecessary to address whether the policy itself is facially unconstitutional: because the policy authorizes the allegedly unconstitutional conduct, the alleged constitutional violation was the result of the municipality's actions rather than a failure to train its employees. However, with respect, this is a meaningless distinction. An allegation that an employee unconstitutionally applied a facially constitutional policy is the logical equivalent of an allegation that the municipality failed to adequately train its employees in how to constitutionally apply that policy. In either case, the municipality is being held liable because of its failure to ensure that its policy is applied constitutionally. Indeed, if the municipality appropriately trained its employees as to the constitutional manner in which to apply the policy, the municipality would indisputably not be liable if an employee nonetheless applied the policy in an unconstitutional manner.[7]

---

[7] Recognizing that my view of the law of municipal liability is in accordance with a wide range of jurisdictions, see note 4 of this opinion, the majority notes that "several other federal appellate courts have not addressed the issue or have not found it necessary to expand on *Canton* and *Brown* in the manner that is suggested by the concurrence." *Ante* at 24 n 12. But with the exception of *Christensen v Park City Muni Corp*, 554 F3d 1271, 1278-1280 (CA 10, 2009), all of the cases cited by the majority addressed situations in which a plaintiff specifically alleged that the municipality was deliberately indifferent; none of these cases addressed whether, in the absence of a showing of deliberate indifference, a municipality may be held liable because of the unconstitutional application of a facially lawful policy by municipal employees. See *Cash v Co of Erie*,

## III

Today, the majority holds (1) that "a policy or custom that authorizes municipal employees to perform their duties in a particular manner represents a deliberate decision of the municipality and an employee's performance of his or her duties in the manner authorized may be considered acts of the municipality," *ante* at 12, and (2) that "if a policy or custom authorizes the use of a specific tactic and a police officer acts in accordance with that authorization, then the policy or custom is the cause in fact and the proximate cause of a constitutional violation arising from the use of that tactic," *ante* at 16. I concur in the judgment of the majority opinion insofar as it concludes that there is a genuine issue of material fact concerning the existence of a municipal "policy or custom" and whether that "policy or custom" caused the constitutional violations alleged. Additionally, because plaintiffs do not allege deliberate indifference by the city of Grand Rapids, I would specifically direct the Court of Appeals to decide on remand whether the complained-of "policy or custom" was facially unconstitutional. Only by prevailing on that issue can plaintiffs demonstrate that the municipality is actually liable for their

---

654 F3d 324, 332-339 (CA 2, 2011) (identifying sufficient evidence to support a jury finding that a sheriff acted with deliberate indifference); *Jenkins v Bartlett*, 487 F3d 482, 492-493 (CA 7, 2007) (finding no genuine issue of material fact as to whether there was a constitutional violation and as to whether the municipality was deliberately indifferent); *Young v Providence*, 404 F3d 4, 26-31 (CA 1, 2005) (finding a genuine issue of material fact as to whether the training program was deficient and whether the municipality was deliberately indifferent); *Daskalea v District of Columbia*, 343 US App DC 261, 269; 227 F3d 433 (2000) (concluding that "the jury had more than sufficient evidence upon which to base its finding of deliberate indifference").

alleged injuries. In other words, only then will the connection between culpable municipal conduct and harm be sufficiently firm to implicate *Monell* liability.[8]

Kurtis T. Wilder
Stephen J. Markman
Brian K. Zahra

---

[8] The majority insinuates that I am going further than necessary by addressing whether plaintiffs must show that the policy or custom at issue was facially unconstitutional in order to recover from defendant. See *ante* at 25 n 14. The fundamental issue in this case is under what circumstances a municipality may be held liable for alleged constitutional violations perpetrated by its employees while acting in accordance with a municipal policy or custom. The majority opinion insinuates that if plaintiffs' constitutional rights were violated, their claims against the municipality may proceed, regardless of whether the complained-of policy or custom was facially unconstitutional. For the reasons stated in this opinion, I conclude that a municipality may only be held liable for violating an individual's constitutional rights as a result of executing a policy or custom of the municipality if the policy or custom is facially unconstitutional or if the policy or custom was enacted with deliberate indifference. This is a pure issue of law that is necessary to the disposition of this case and was briefed by both parties. Accordingly, I believe it is entirely appropriate to explain why I disagree with the majority's insinuation and to describe the analysis that the Court of Appeals should undertake on remand.