*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

TYNEKA LLOYD,

Plaintiff-Appellant,

v

JAMES CHADBURN RICHARDSON,

Defendant-Appellee.

UNPUBLISHED
December 12, 2024
2:28 PM

No. 368531
Genesee Circuit Court
LC No. 21-115755-NI

Before: GADOLA, C.J., and SWARTZLE and LETICA, JJ.

PER CURIAM.

Plaintiff, Tyneka Lloyd, appeals as of right the trial court's order granting defendant, James Chadburn Richardson, summary disposition under MCR 2.116(C)(10) of plaintiff's claim for noneconomic loss under Michigan's no-fault insurance act. We affirm.

## I. FACTS

Early in the morning on July 19, 2020, defendant was driving when his vehicle struck the passenger side of the vehicle in which plaintiff was a passenger. Plaintiff alleges that during the collision she hit her head and knee, and felt pain in her head, neck, and back. The police report from the collision indicates that there were no injuries. After the collision plaintiff returned home.

Later that day, she went to the hospital complaining of nausea and vomiting. Medical records from the visit indicate that plaintiff discussed the accident and complained of pain in her knee, elbow, and hip. The medical report noted that plaintiff ambulated without difficulty. Plaintiff was diagnosed with arm and leg contusions (bruising), and prescribed a muscle relaxer for muscle spasms and pain. She returned home that same day.

On July 21, 2020, plaintiff was seen by her primary care physician for a follow-up visit after being seen at the hospital on July 16, 2020 (before the motor vehicle collision at issue in this case), for complaints of chest pain, pelvic pain, and associated back pain. According to the medical records from the July 16, 2020 visit, plaintiff had been experiencing these symptoms for more than one month. Plaintiff was prescribed ibuprofen and acetaminophen.

-1-

Plaintiff returned to her primary care provider on July 28, 2020. The records from the visit indicate that plaintiff discussed the accident and reported that her left knee "may have hit the dashboard of the car during the accident." She reported pain and a popping sound in her left knee that occurred daily and that was aggravated by walking and standing. Records from the physical examination indicate tenderness in plaintiff's knee and pain and spasm in plaintiff's lumbar area, but normal range of motion, no swelling, and a normal gait. The primary care provider's assessment was, "Acute midline low back pain with bilateral sciatica," and, "Acute pain of left knee." The primary care provider ordered an x-ray of plaintiff's left knee, referred plaintiff for physical therapy, and prescribed Flexeril for muscle spasms and ibuprofen for pain.

Plaintiff returned to her primary care provider on August 26, 2020, for a follow-up visit. The medical records from that visit indicate the same physical examinations and assessments; plaintiff reported back pain and spasm, but had a normal range of motion and did not have joint swelling or a gait problem. An x-ray report from July 30, 2020, speculated that "sclerosis in the medial tibial plateau could reflect a nondisplaced fracture. MRI is recommended for further evaluation." The MRI report, however, determined that there was no fracture, stating "no discrete internal derangement. Small effusion. Anteromedial subcutaneous edema potentially representing a low-grade shear injury. No fracture present."

Plaintiff began physical therapy on August 4, 2020, to address acute left knee pain. Plaintiff completed a questionnaire in which she indicated slight to moderate difficulty performing activities such as housework, hobbies, and recreational and sporting activities. The physical therapist recommended that plaintiff participate in physical therapy twice a week for four weeks. Plaintiff's percentage of "maximal function" was 70%. The physical therapist's initial assessment was that plaintiff appeared to have "decreased strength of the LE, altered squat and gait mechanics, and decreased single limb balance," and that these impairments should be addressed with physical therapy.

Plaintiff attended physical therapy for approximately five weeks, missing some appointments. On September 1, 2020, plaintiff requested discharge from physical therapy; her physical therapy records indicate "0 – No pain" and the percentage of maximal function was 87.5%, but that plaintiff "continues to have some limitations with L knee flexion, which may contribute to gait deviations." Plaintiff reported no difficulty in activities such as her usual work, housework, walking one mile, going up a flight of stairs, getting in or out of a car, standing for an hour, or rolling over in bed. She reported a little bit of difficulty squatting, lifting, performing heavy chores around the house, engaging in her usual hobbies and recreational activities, running, and hopping. Plaintiff wanted "to be discharged at this time with a HEP [Home Exercise Program], as goals have been reasonably met and she would like to proceed with therapy for low back." Plaintiff also underwent an EMG and nerve conduction study, and the results suggested "left moderately severe and right mild median mononeuropathy, (carpal tunnel syndrome), at the wrist." There was no mention of the accident and no apparent referral. As of her September 10, 2020 physical therapy appointment, plaintiff reported that the pain was very mild and that she could wash and dress herself, lift heavy weights, stand, walk, and travel, although she reported that these activities increased her pain.

On June 15, 2021, plaintiff filed the complaint in this case alleging a third-party no-fault claim against defendant. Plaintiff alleged that defendant's operation of his vehicle caused her to

suffer numerous injuries resulting in a serious impairment of body function. Plaintiff testified that she continued to suffer daily pain that prevents her from engaging in her past hobbies, such as doing hair and lashes, cooking, and walking.

Defendant moved for summary disposition under MCR 2.116(C)(10), contending that plaintiff had failed to demonstrate a serious impairment of body function. Defendant argued that plaintiff had presented evidence of mere subjective complaints of pain, that she reported that she no longer was in pain after minimal physical therapy, and that since the accident she had traveled on three vacations and also had moved to Texas. Plaintiff asserted that she had presented evidence demonstrating that she had suffered a serious impairment of body function because she continued to suffer pain and was limited in her ability to pursue the activities she pursued before the collision.

The trial court granted defendant's motion for summary disposition. The trial court found that plaintiff had failed to demonstrate a serious impairment of body function because she failed to show an objectively manifested impairment of an important bodily function affecting her ability to live her normal life. The trial court reasoned that plaintiff's x-ray and MRI showed only possible injuries, not impairments of a body function, and that plaintiff had traveled on three trips since the accident, one of which occurred soon after the accident, thereby demonstrating her ability to lead her normal life. The trial court denied plaintiff's motion for reconsideration. Plaintiff now appeals.

## II. DISCUSSION

Plaintiff contends that the trial court erred by granting defendant summary disposition under MCR 2.116(C)(10). Plaintiff argues that she presented sufficient evidence of a serious impairment of body function under MCL 500.3135, and contends that the trial court improperly considered the weight and credibility of the evidence. We disagree.

We review de novo the trial court's decision to grant or deny a motion for summary disposition. *Ottgen v Katranji*, 511 Mich 223, 230; 999 NW2d 359 (2023). We also review de novo the interpretation and construction of the no-fault act, which is a question of law. See *Steanhouse v Mich Auto Ins Placement Facility*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 359576); slip op at 2.

A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of a claim, and is properly granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019). When reviewing the trial court's decision to grant or deny summary disposition under MCR 2.116(C)(10), we consider the documentary evidence submitted by the parties in the light most favorable to the nonmoving party. *Id*. A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might disagree. *Johnson v Vanderkooi*, 502 Mich 751, 761; 918 NW2d 785 (2018).

A party opposing summary disposition under MCR 2.116(C)(10) cannot rest only on the allegations of his or her pleading, but must come forward with specific facts to establish that a genuine issue of material fact for trial exists. MCR 2.116(G)(4); *Bronson Health Care Group, Inc v Esurance Prop and Cas Ins Co*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 363486); slip op at 4. If the non-moving party fails to do so, the moving party is entitled to

summary disposition. MCR 2.116(G)(4); *Bernardoni v City of Saginaw*, 499 Mich 470, 473; 886 NW2d 109 (2016).

Under Michigan's no-fault insurance act, a person remains liable for noneconomic loss caused by the person's "ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement." MCL 500.3135(1). Whether an injured person has suffered serious impairment of body function is a question of law for the court when the court finds either of the following:

> (*i*) There is no factual dispute concerning the nature and extent of the person's injuries.
>
> (*ii*) There is a factual dispute concerning the nature and extent of the person's injuries, but the dispute is not material to the determination whether the person has suffered a serious impairment of body function or permanent serious disfigurement. . . . [MCL 500.3135(2)(a).]

"Under the plain language of the statute, the threshold question whether the person has suffered a serious impairment of body function should be determined by the court as a matter of law as long as there is no factual dispute regarding 'the nature and extent of the person's injuries' that is material to determining whether the threshold standards are met." *McCormick v Carrier*, 487 Mich 180, 193; 795 NW2d 517 (2010), quoting MCL 500.3135(2)(a)(*ii*). The trial court must first ascertain whether there is a material factual dispute regarding the nature and extent of the person's injuries. *Id*. at 215. "[T]he disputed fact does not need to be outcome determinative in order to be material, but it should be significant or essential to the issue or matter at hand." *Id*. at 194 (quotation marks and citation omitted). "If there is no factual dispute, or no material factual dispute, then whether the threshold is met is a question of law for the court." *Id*. at 215.

If the trial court determines that there is no material factual dispute, the trial court must then determine whether the plaintiff has met the threshold for liability. Under MCL 500.3135, a "serious impairment of body function" means an impairment that satisfies all of the following requirements:

> (a) It is objectively manifested, meaning it is observable or perceivable from actual symptoms or conditions by someone other than the injured person.
>
> (b) It is an impairment of an important body function, which is a body function of great value, significance, or consequence to the injured person.
>
> (c) It affects the injured person's general ability to lead his or her normal life, meaning it has had an influence on some of the person's capacity to live in his or her normal manner of living. Although temporal considerations may be relevant, there is no temporal requirement for how long an impairment must last. This examination is inherently fact and circumstance specific to each injured person, must be conducted on a case-by-case basis, and requires comparison of the injured person's life before and after the incident. [MCL 500.3135(5).]

To summarize, to establish a serious impairment of body function the plaintiff must demonstrate (1) an objectively manifested impairment, (2) of an important body function, (3) that affects the person's general ability to lead his or her normal life. See *McCormick*, 487 Mich at 195. The analysis of these elements "is inherently fact- and circumstance-specific and must be conducted on a case-by-case basis." *Id.* at 215.

To demonstrate an objectively manifested impairment, meaning "an impairment that is evidenced by actual symptoms or conditions that someone other than the injured person would observe or perceive as impairing a body function," *id.* at 196, the plaintiff must introduce evidence demonstrating a physical basis for the plaintiff's subjective complaints of pain and suffering. The focus "is not on the injuries themselves, but how the injuries affected a particular body function. " *Id.* at 197 (quotation marks and citation omitted). Although the statute does not specifically require medical testimony, medical testimony generally will be necessary to establish an impairment because the plaintiff must establish a physical basis for the plaintiff's subjective complaints of pain, *id.* at 198, given that "subjective complaints of pain and suffering are insufficient to show impairment." *Patrick v Turkelson*, 322 Mich App 595, 607; 913 NW2d 369 (2018).

If the trial court finds that the plaintiff has demonstrated an objectively manifested impairment, the trial court must then determine whether the impaired body function is important, which is a subjective inquiry requiring comparing the plaintiff's life before and after the injury. *Id.* The body function must have great value, significance, or consequence to satisfy the second element. *Id.*

To demonstrate the third element, the plaintiff must demonstrate that the impairment affects the person's general ability to lead a normal life, meaning that the impairment has "an influence on some of the person's capacity to live in his or her normal manner of living." MCL 500.3135(5)(c); see also *McCormick*, 487 Mich at 202-203. This inquiry also requires comparing the plaintiff's life before and after the incident. *Id.* The proper inquiry is "whether, although a person is able to lead his or her pre-incident normal life, the person's general ability to do so was nonetheless affected." *Id.*

In this case, the parties do not dispute the material facts concerning the nature and extent of plaintiff's alleged injuries. That is, defendant does not dispute that plaintiff injured her back, neck, knee, and elbow in the collision and that plaintiff may experience pain. Because there is no factual dispute regarding the nature and extent of plaintiff's injuries, the threshold question whether plaintiff demonstrated that she suffered a serious impairment of body function was a question of law for the trial court. See *id.* at 193.

Defendant contends that plaintiff failed to establish that her alleged injuries constitute a serious impairment of body function. The trial court found that plaintiff failed to establish either the first or the third elements required to demonstrate a serious impairment of body function. The trial court stated, in relevant part:

> Well, we've got two standards that I need to acknowledge and apply here. This is a motion that was brought under [MCR 2.116](C)(10) which tests the factual basis . . . underlying the plaintiff's claim. I must review the record evidence, make all reasonable inferences therefrom, and determine whether a genuine issue of material

fact exists giving the non-moving party the benefit of reasonable doubt. So, I've got to look at all of this in a light that would be most favorable to Ms. Lloyd.

[S]o that's the [summary disposition] standard, but serious impairment. It's always tricky. This requires the plaintiff to prove that; one, she sustained an objectively manifested impairment, we've had a lot of discussion about that, of; second, an important bodily function that; third, affects her general ability to lead her normal life.

Defendant is really – I think you're arguing all three factors. You're stating that she has not met any of these. I know plaintiff is saying that there – taking the first one, the objectively manifested impairment. Is it enough that she complains of pain? No, I don't think so. That's not been my experience on reading the serious impairment cases.

I'm not sure that there has really been presented proof of something that is objectively manifested. And I'm – this is something that would be visible or, wait, I want to give the exact language from the case. I know that plaintiff has made several complaints. There was mention of the effusion, the edema. No one is claiming that she was not in this accident, but has she suffered an impairment of an important bodily function?

What actually did catch my eye is this – the testimony that she said that she had – she's left-handed, the pain was in her left hand, and therefore, she had to learn to write with her right hand. I think that writing, being able to write would be an important bodily function. So, I'm willing to give her that, but I'm frankly not seeing the other two factors here.

I do think it's important that she has traveled not just one time, but multiple times. Even though I know in the brief that was in the list of things that plaintiff said that she could not do, but . . . within months of the accident, she travelled, and most recently, she went to Jamaica. And somewhere in there she went to Miami and Las Vegas, . . . and moved to Texas.

I'm not seeing how her – the general ability to lead her normal life has been affected. And even – I mean, again, now is the time. I've not been presented with that type of evidence that would survive. Even when viewing this in the light most favorable to her, I'm not – I'm not seeing that she meets the standard, the *McCormick* standards on two of the three factors. So, I believe I'm going to grant this motion.

Regarding the first element, an objectively manifested impairment, plaintiff testified to subjective manifestations of pain, and her medical records describe her potential injuries and reports of pain. An objectively manifested impairment is one evidenced by actual symptoms or conditions observable by someone other than the plaintiff. Here, plaintiff presented only allegations of injuries that she asserts form the basis of her pain, but did not support these allegations with evidence of a condition or symptom objectively observable, for example, by the

healthcare providers treating her alleged injuries. Plaintiff's physical therapy records indicate that although she initially reported difficulty performing various daily activities, she had no observable impairment of her range of motion or her gait. Moreover, after a handful of physical therapy sessions she reported that she no longer was in pain, had achieved her physical therapy objectives, could stand, sit, walk, do housework, and participate in her hobbies with no or little difficulty, and chose to end physical therapy. The trial court did not err by concluding that plaintiff had failed to demonstrate an objectively manifested impairment.

The trial court found that regarding the second element, whether the impaired body function is important, plaintiff's allegation that she had difficulty writing because of pain in her hand implicated an important body function if the impairment were demonstrated.[1] The trial court found, however, that plaintiff did not establish the third element, that the alleged impairment affected plaintiff's general ability to lead a normal life. Plaintiff described that she experienced daily pain, that she changed jobs because of the accident, that she now was limited in participating in her prior hobby of cooking, and was completely unable to participate in her prior hobbies of doing hair and lashes. However, her physical therapy records indicate that she reported no pain when she left therapy, that she could stand, sit, and walk without difficulty, and that her range of motion was restored. Moreover, plaintiff took three trips following the collision and also moved to Texas. The trial court focused on the evidence presented and determined that plaintiff had failed to show the existence of any objectively manifested impairment or that the alleged impairments affected her ability to lead her normal life. Contrary to plaintiff's arguments, the trial court did not impermissibly consider the weight and credibility of the evidence, and the trial court did not err by granting defendant summary disposition of plaintiff's claim.

Affirmed.

/s/ Michael F. Gadola
/s/ Brock A. Swartzle
/s/ Anica Letica

---

[1] Plaintiff's diagnosis of carpal tunnel syndrome, which is a repetitive use injury, appears to be unrelated to any trauma arising from the motor vehicle collision.