*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

EMILY K. ADKISON-HOYT, MARK V. BENJAMIN, SHARON A. BORDEAU, MARJORIE A. BRAWER, EMILY CHAMBERLAIN, JUSTIN CHAMBERLAIN, ROBERTA D. COLANER, DOUGLAS R. DAIL, DAVID A. DONALDSON, MICHAEL S. DUBIN, KRISTA R. HENLEY, STEPHEN M. HENLEY, BRIAN J. JACOBSON, GERARD J. MATUSZAK, ROSE M. MATUSZAK, CRAIG S. MORRIS, STEPHEN C. PRESTON, YUME N. PRESTON, JEAN M. ROSELLA, JOHN A. ROSELLA, DAVID B. WISS, ALLYN C. YOUNG, KRITIKA M. VERSHA, PATRICK K. WHITE,

UNPUBLISHED
April 08, 2025
11:51 AM

Plaintiffs-Appellants,

and

ANTON R. SUAREZ and ELIZABETH K. SUAREZ,

Plaintiffs,

v

No. 369764
Washtenaw Circuit Court
LC No. 23-001106-CZ

SUPERIOR CHARTER TOWNSHIP and
SUPERIOR TOWNSHIP BOARD OF TRUSTEES,

Defendants-Appellees,

and

GARRETT'S SPACE,

Intervening Defendant-Appellee.

-1-

Before:  BOONSTRA, P.J., and LETICA and RICK, JJ.

PER CURIAM.

In this zoning action, plaintiffs-appellants, who are residents of Superior Charter Township, appeal as of right an order granting summary disposition to defendants-appellees, Superior Charter Township (the Township) and Superior Township Board of Trustees (The Board), and to intervening defendant, Garrett's Space (GS).  We affirm.

## I.  FACTUAL BACKGROUND

Plaintiffs own land near the property in question, which is located at 3900 North Dixboro Road in Superior Charter Township (the Dixboro property).  In February 2023, plaintiffs received a letter[1] informing them that GS was considering purchasing the property.  GS is a nonprofit organization aimed toward assisting young adults who suffer from depression, anxiety, and suicidal ideation.  The organization sought to build a managed residential center on the Dixboro property with programming designed to assist young adults with mental health struggles in an attempt to help them avoid "outpatient therapy, psychiatric medication, and inpatient hospitalization."  In order to build the facility on the Dixboro property, however, the land had to be rezoned from an agricultural district—known as "A2" in the Township's zoning ordinances— to PC, or "planned community" zoning.  GS requested that the land be rezoned, and plaintiffs launched a campaign to stop the project from going forward.  In July 2023, over continued objections from plaintiffs, the Board voted 5-2 to approve the request.

Plaintiffs filed a complaint against the Township and the Board (collectively, the Superior Township defendants) in August 2023.  In Count I, plaintiffs sought declaratory and injunctive relief against the Superior Township defendants.  They argued that rezoning the land was inconsistent with the township's Master Plan, which designates the area as suitable for rural and residential purposes.  Plaintiffs contended that the project, with its proposed dormitories, offices, and services, was incompatible with the low-density residential and agricultural uses envisioned for the area. Plaintiffs argued that this inconsistency violated township ordinances and could encourage further high-density development.  They likewise argued that the rezoning constituted illegal spot zoning because it created an isolated, incompatible use within a larger zone. Additionally, plaintiffs raised concerns about the environmental impact of the project, particularly on wetlands.  They further argued that the township lacked sufficient information to assess these impacts properly.  In Count II, plaintiffs argued that their substantive due process rights were violated, stating that "[a] zoning ordinance violates a property owner's due process rights if the ordinance fails to substantially relate to or further the goals of the land use classification to which the property is zoned."  In Count III, plaintiffs alleged that the Township violated its own procedures in approving the rezoning.

---

[1] Plaintiffs challenge the notion that all of them received the letter, instead noting that only "a random smattering" were notified of the potential purchase and development of 3900 Dixboro Road.  However, at no point have they raised a direct challenge based on a lack of notice.

In lieu of filing an answer to the complaint, GS filed a motion for summary disposition under MCR 2.116(C)(8) (failure to state a claim) and (C)(10) (no genuine issue of material fact). In a brief in support of the motion, GS emphasized that rezoning is a legislative act that is presumed valid. To overturn it, GS explained that plaintiffs had to show that the rezoning was arbitrary and unreasonable, and that it served no legitimate governmental interest. According to GS, courts do not act as "superzoning commissions," and thus the trial court had to give deference to local legislative decisions on zoning.

GS also argued that the proposed development was compatible with the Township's Master Plan, which calls for preserving natural features and allowing a variety of housing types. It argued that the development would preserve 55 to 60 acres of open space and natural areas, which is more than a typical residential development would be able to preserve. To further support their argument, GS presented calculations showing that the proposed development would have lower density and intensity of use compared to what could be developed under the previous zoning designation. GS pointed out that the development would house fewer people and generate less traffic than typical residential development on the site.

GS also responded to Counts II and III of the complaint, regarding due process and procedural violations. As to Count II, GS contended that plaintiffs had not met the high bar to show a violation of substantive due process, as the township's decision was not arbitrary or unreasonable. Finally, as to Count III, GS challenged plaintiffs' claims that the Township and the Board failed to follow proper procedures, noting that the development agreement had not yet been approved. GS additionally argued that the Township had properly followed its zoning ordinance in considering preliminary site work.

The Superior Township defendants also filed a joint motion for summary disposition under MCR 2.116(C)(8) and (C)(10). In a brief in support of the motion, they outlined the extensive review process for the rezoning, including professional consultants' reviews, a Planning Commission recommendation, and Board approval. The Superior Township defendants refuted plaintiffs' claims that the rezoning was illegal or violated procedures. In support of that argument, the Superior Township defendants cited various sections of the local zoning ordinance. They emphasized that GS, as a managed residential facility, is an allowed use under PC zoning.

The Superior Township defendants also argued that plaintiffs could not maintain their substantive due process claim because zoning board decisions are legislative decisions, which are not to be interfered with by the trial court unless they are arbitrary. The Superior Township defendants contended that the decision to rezone the GS property was based on professional review and substantial consideration, and that it was thus not arbitrary. They noted that it was likely that plaintiffs would contend that summary disposition was premature because no discovery had yet been conducted, but argued that plaintiffs could not present evidence of a factual dispute to support the need for further discovery. The Superior Township defendants thus asked the trial court to grant their motion for summary disposition.

In response to these motions for summary disposition, plaintiffs argued that rezoning decisions are not immune to challenge, even if rezoning is a legislative act that should be given some presumption of validity. Plaintiffs contended that, contrary to GS's argument, the court was not being asked to act as a "super zoning board." Instead, plaintiffs reasoned that the court was

simply being asked to determine whether the rezoning violated the Township's zoning ordinances and Master Plan. Plaintiffs argued that the rezoning did violate Township ordinances and the Master Plan, contending that the proposed use did not meet the criteria for approving a rezoning and violated at least three of the standards set forth in the Township's zoning ordinance. Plaintiffs further contended that the parcels were not eligible for PC district rezoning and that the proposed use violated most of the enumerated limitations set forth in the Township zoning ordinance regarding uses in the PC district.

Plaintiffs also argued that significant water, sewer, and stormwater management issues existed on the development site, noting that the site is serviced by well water that contained high arsenic levels. According to plaintiffs, the stormwater management plan proffered by GS might also violate wetland protection laws. Plaintiffs further reiterated the argument that rezoning the property constituted illegal spot zoning. Plaintiffs thus asked the court to deny GS's motion for summary disposition.

A hearing on the motions was held in January 2024. The trial court elected to grant summary disposition to GS and the Superior Township defendants "for all the reasons that were articulated in the arguments made by the defendants." The trial court further noted that plaintiffs' arguments regarding wetland development and water use were at best "red herrings," stating:

> Those are issues that other agencies very confidently and scientifically and adequately take a look at before a facility like what's proposed is built. And the job for the Township is to determine whether—whether the proposed use fits the zoning and is—and if it doesn't fit the zoning, if there's any deviation from the primary zoning, that it is consistent with the master plan. And that is what Superior Township has done in this circumstance.
>
> Any issue of site plan approval, of the various permissions that need to be given to build a facility like what is proposed, and whether the needs of the facility as well the neighboring properties can be met[] by the water supply [or] whether[] the wetlands are going to be protected . . . those are issues for, as I said, other agencies.

The court thereafter entered an order granting summary disposition to GS and the Superior Township defendants consistent with its ruling on the record. This appeal followed.

## II. ANALYSIS

Plaintiffs argue that the trial court erred by granting summary disposition to the Superior Township defendants and to GS, when no discovery had been taken, and when questions of fact existed as to whether the rezoning of the Dixboro property was supported by the Township zoning ordinance. We disagree.

## A. STANDARDS OF REVIEW

This Court reviews de novo a trial court's decision to grant or deny a motion for summary disposition. *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009). Both GS and the Superior Township defendants moved for summary

disposition under MCR 2.116(C)(8) and (C)(10). The trial court did not specify the subsection under which it granted the motions, either at the hearing or in the order that followed. However, "since the record is clear that the parties have relied on matters outside the pleadings to argue the motion, this Court construes the motion as one brought pursuant to MCR 2.116(C)(10), no genuine issue of material fact, and reviews it as such." *Meridian Mut Ins Co v Hunt*, 168 Mich App 672, 676; 425 NW2d 111 (1988).

A motion under MCR 2.116(C)(10) tests the factual sufficiency of a claim. *Johnson v VanderKooi*, 502 Mich 751, 761; 918 NW2d 785 (2018). A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of a plaintiff's claim. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019). When reviewing the trial court's decision to grant or deny summary disposition under MCR 2.116(C)(10), this Court considers the parties' documentary evidence "in the light most favorable to the party opposing the motion." *Johnson*, 502 Mich at 761 (quotation marks and citation omitted). A motion brought under subrule (C)(10) is properly granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *El-Khalil*, 504 Mich at 160. "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might disagree." *Johnson*, 502 Mich at 761.

This Court also "reviews de novo a [circuit] court's decision in an appeal from a city's zoning board, while giving great deference to the [circuit] court and zoning board's findings." *Edward C Levy Co v Marine City Zoning Bd of Appeals*, 293 Mich App 333, 340; 810 NW2d 621 (2011). It likewise "review[s] de novo the proper interpretation and application of the City's ordinances." *Comm for Marshall-Not the Megasite v City of Marshall*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 369603); slip op at 7 (citations omitted).

However, to the extent that plaintiffs' claim on appeal concerns the failure to allow further discovery, the issue is unpreserved because plaintiff did not raise it in the court below. See *Glasker-Davis v Auvenshine*, 333 Mich App 222, 227; 964 NW2d 809 (2020) (finding that an issue needs to either be raised in or addressed by the lower court to be preserved). Unpreserved claims in civil cases are generally deemed waived. See *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, 347 Mich App 280, 301; 14 NW3d 472 (2023).

B. SUMMARY DISPOSITION

As an initial matter, plaintiffs fault the trial court for failing to specify whether it was granting summary disposition to the Superior Township defendants and to GS based on MCR 2.116(C)(8) or (C)(10). As earlier noted, plaintiff did not oppose the motions for summary disposition at issue in this case by arguing that summary disposition was premature. Thus, the matter is not properly before this Court. *Id.* at 301. Moreover, plaintiffs overlook that "summary disposition may still be appropriate before the conclusion of discovery if there is no fair likelihood that further discovery would yield support for the nonmoving party." *Redmond v Heller*, 332 Mich App 415, 448; 957 NW2d 357 (2020). Plaintiffs make no effort to support the contention that further discovery would produce evidence in support of their position. This argument has thus been abandoned. See *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959) (stating that an appellant may not simply announce a claim of error and then "leave it up to this Court to

-5-

discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position").

## C. ZONING

Plaintiffs additionally contend that the Board's decision to rezone the Dixboro property violated the Township zoning ordinance. Michigan's Legislature has given local governments and municipalities the authority to zone "for the broad purposes identified in MCL 125.3201(1)." *Kyser v Kasson Twp*, 486 Mich 514, 520; 786 NW2d 543 (2010). Under MCL 125.3201(1),

[a] local unit of government may provide by zoning ordinance for the regulation of land development and the establishment of 1 or more districts within its zoning jurisdiction which regulate the use of land and structures to meet the needs of the state's citizens for food, fiber, energy, and other natural resources, places of residence, recreation, industry, trade, service, and other uses of land, to ensure that use of the land is situated in appropriate locations and relationships, to limit the inappropriate overcrowding of land and congestion of population, transportation systems, and other public facilities, to facilitate adequate and efficient provision for transportation systems, sewage disposal, water, energy, education, recreation, and other public service and facility requirements, and to promote public health, safety, and welfare.

Zoning is thus a legislative act as well as an "exercise of [a local government's] police power . . . ." *Id.*; see also *Connell v Lima Twp*, 336 Mich App 263, 283; 970 NW2d 354 (2021) (quotation marks and citation omitted) (stating that "it is settled law in Michigan that the zoning and rezoning of property are legislative functions"). Because zoning is a legislative act, the courts "do[] not sit as a superzoning commission.' " *Kyser*, 486 Mich at 520 (quotation marks and citations omitted). However, this does not mean that this Court lacks all power to review zoning decisions. As our Supreme Court has explained:

The Due Process Clause is included in Const. 1963, art. 1, § 17 of the Michigan Constitution and provides in pertinent part: "No person shall . . . be deprived of life, liberty or property, without due process of law . . . ." The test to determine whether legislation enacted pursuant to the police power comports with due process is whether the legislation bears a reasonable relation to a permissible legislative objective . . . . When the individual interest concerns restrictions on the use of property through a zoning ordinance, the question is whether the power, as exercised, involves an undue invasion of private constitutional rights without a reasonable justification in relation to the public welfare. [*Kyser*, 486 Mich at 521 (quotation marks and citations omitted).]

Zoning ordinances, and amendments thereto, are presumed reasonable. *Robinson v Bloomfield Hills*, 350 Mich 425, 432; 86 NW2d 166 (1957). Plaintiffs, who are challenging the rezoning at issue, have the burden to overcome that presumption. *Kyser*, 486 Mich at 521. To do so, they must prove "that there is no reasonable governmental interest being advanced by the zoning ordinance[,]" or in other words, "that the ordinance is an arbitrary and unreasonable restriction upon the owner's use of his property." *Id.* (quotation marks and citation omitted). A

zoning ordinance or amendment will only be struck down "if it constitutes an arbitrary fiat, a whimsical ipse dixit, and . . . there is no room for a legitimate difference of opinion concerning its [un]reasonableness." *Id.* at 521-522 (quotation marks and citations omitted, alteration in original). "Under this deferential standard of review, successful challenges will be limited to 'extreme' cases." *Essexville v Carrollton Concrete Mix, Inc*, 259 Mich App 257, 268; 673 NW2d 815 (2003).

Plaintiffs first argue that the trial court erred by granting summary disposition to defendants because the rezoning did not meet the proper criteria required for PC zoning, per the Zoning ordinance's language. In support of this argument, plaintiffs cite to Superior Charter Township Zoning Ordinance, § 18.06, which states, in relevant part:

> In reviewing any petition for a zoning amendment, the Planning Commission shall identify and evaluate all factors relevant to the petition. All findings of fact and conclusions shall be made a part of the public records of the meetings of the Planning Commission. The facts to be considered by the Planning Commission shall include, but shall not be limited to, the following:
>
> 1. Whether or not the requested zoning change is justified by a change in conditions since the original Ordinance was adopted, or by an error in the original Ordinance.
>
> 2. The precedents, and the possible effects of such precedents, that might result from approval or denial of the petition.
>
> 3. The capacity of Superior Township or other government agencies to provide any services, facilities, and/or programs that might be required if the petition were approved.
>
> 4. Effect of approval of the petition on the condition and/or value of property in Superior Township or in adjacent municipalities.
>
> 5. Relation of the petition to the Township's adopted Growth Management Plan, and of other government units where applicable. [Superior Charter Township Zoning Ordinance, § 18.06.]

In determining that rezoning the Dixboro property from an A2 zone to a PC zone, the Superior Township Planning Commission (the Commission)[2] drafted a four-page resolution recommending to the Board that the Dixboro property be rezoned. Two pages of the resolution are dedicated to the Commission's findings of fact. The resolution indicated that the rezoning would "allow for greater collaboration" and "a creative approach to land use and development." The Commission also stated that rezoning from A2 to PC zoning would allow the Township and GS to "collaborate to better protect the sites [sic] natural features and reduce impact upon adjacent properties than could be accomplished through a by-right site plan or through a conventional

---

[2] The Commission is a separate entity from the Board. The Commission was not named as a party to this lawsuit and does not participate in this appeal.

subdivision development." These findings satisfy § 18.06(1). The Commission additionally noted that the Dixboro property is adjacent to residential areas, but that "there are institutional uses in the immediate area including across Dixboro[,]" suggesting that the rezoning is in conformity with other uses in the area. The Commission identified no negative precedent that would be set by approving the rezoning, thus satisfying § 18.06(2). Next, the Commission stated that "[t]he type and intensity of use will not exceed the capacity of existing public services and the applicant is providing necessary onsite infrastructure to accommodate use[,]" which satisfies § 18.06(3).

The Commission additionally found that rezoning the property from A2 to PC would allow the Township to better maintain the natural features on the site and would not lead to excessive traffic or visual impacts from the road. Importantly, the Commission observed that 55 to 60 acres of the property would be placed in a conservation easement, which equates to 71 to 77% of the total land area. According to the Commission, the impact on the natural features of the land was "less than what would occur if the site were to develop as a conventional A2, Agricultural district subdivision development." The Commission thus satisfied its obligation to make findings of fact in relation to § 18.06(4). Finally, in relation to § 18.06(5), the Commission found that "the proposed development of the site meets the Master Plan and Growth Management standards of sustainability, maintenance of the natural resource base, and reduction of visual impacts." These findings of fact, which the Board relied on when making its legislative determination to rezone the Dixboro property, were adequately supported by the record, which contains extensive documentation submitted by GS regarding its plans for the site. We see no cause to disturb the Commission's findings in this matter. See *Edward C Levy Co*, 293 Mich App at 340 (stating that this Court must give "great deference to the [circuit] court and zoning board's findings").

Additionally, it bears repeating that the Commission found, and the Board agreed, that rezoning the property would be rationally related to the goals set forth in the Township's Master Plan. The Master Plan focuses on preserving natural spaces and "retain[ing] a rural character," pointing out that "the benefits of nature to citizen mental health are recognized as very important." Plaintiffs have presented no evidence or argument to refute this conclusion. Indeed, their overall focus on challenging the Commission's findings of fact does little to establish that the Board's zoning decision was arbitrary or unreasonable. See *Kyser*, 486 Mich at 521-522. Plaintiffs likewise fail to explain how the rezoning of the property resulted in "an undue invasion of private constitutional rights without a reasonable justification in relation to the public welfare." *Id*. at 521. Instead, their argument at most indicates that "legitimate difference[s] of opinion" exist as to whether the rezoning should have occurred. See *id*. at 522. But that is not sufficient to show that the rezoning decision was arbitrary or unreasonable. *Id*. at 521-522. More broadly, plaintiffs have failed to present a genuine issue of material fact in relation to the Township's adherence to the zoning ordinance that would lead us to conclude that the trial court's ruling should be reversed.

Plaintiffs next contend that the Dixboro property failed to meet the criteria applicable to PC zoning districts set forth in Superior Charter Township Zoning Ordinance, § 7.301(B). The ordinance states, in relevant part:

> Permitted principal and accessory uses in a PC Special District shall be limited to the residential uses, office, service, and community uses, and commercial uses as listed in Article 4.0 (Land Use Table), subject to the standards of Article 5.0 (Use Standards) and the following use limitations:

1. Uses in a PC Special District shall be limited to those specific uses included in the listing of uses shown on the approved Area Plan, preliminary site plan, or final site plan, whichever is applicable. All other uses shall be prohibited, unless otherwise permitted by this Ordinance.

2. Uses in a PC Special District shall be limited to those that are compatible with the Township's adopted Growth Management Plan, and that are harmonious and compatible with, and not harmful, injurious, or objectionable to, existing and future uses in the immediate area.

3. A residential area, designated on an approved Area Plan, preliminary site plan, or final site plan may contain one (1) or more types of dwelling units, provided that such combination of dwelling unit types will not interfere with orderly and reasonable planning, development, and use of an area.

\* \* \*

6. Private community wastewater systems (PCWS) may be permitted as an accessory use within a development In the PC Special District, under the following conditions:

a. The development shall be located outside of the Public Sanitary Sewer Service Area or "Urban Service Area" as defined in the Growth Management Plan.

b. The PCWS shall comply with the standards of this Ordinance and the Private Community Wastewater Systems Ordinance (Ord. No. 166, as amended.)

c. The development shall consist of a single land use type, as categorized by the Washtenaw County Environmental Health Division.

d. Determination by the Township that use of a PCWS is necessary to facilitate permanent protection and conservation of important wetlands, natural features, open spaces, or agricultural lands in the Township.

e. Any development in the PC Special District for which a PCWS is proposed shall include permanent conservation of fifty percent (50%) or more of the land area proposed for development as agricultural land or open space. [Superior Charter Township Zoning Ordinance, § 7.301(B)(1) through (3), and (6).]

Regarding § 7.301(B)(1), GS sought to use the land as a "managed residential facility" at all points in the proceedings below. This use is permitted under Superior Charter Township Zoning Ordinance, § 4.02, and the Board clearly did not agree with plaintiffs' attempts to characterize the property as incompatible with the PC zoning district. Regarding § 7.301(B)(2) and (3), we again note that the Commission made extensive findings of fact indicating that the proposed plans for the property comported with the Township's Master Plan and Growth Management plan, and that no issues existed with the proposed development that would interfere with the use of the property or the adjacent properties. As to § 7.301(B)(6), we again observe that the Commission concluded that GS's development of the property would not exceed the capacity of existing services, and that

any infrastructure upgrades necessary would be provided by GS. The Board used these findings of fact in determining that the property should be rezoned.

Plaintiffs' complaints regarding § 7.301(B) are unsupported by the record, and again only show that "legitimate difference[s]" of opinion exist as to whether the Dixboro property should have been rezoned. *Kyser*, 486 Mich at 522. But plaintiffs have again failed to show that the Board's decision to rezone the property from A2 to PC zoning was invalid by presenting evidence that the zoning amendment was arbitrary or unreasonable. *Id*. at 521-522. Ultimately, plaintiffs have neither presented a compelling argument as to why this Court should not defer to the findings of the Commission, the Board, and the trial court, see *Edward C Levy Co*, 293 Mich App at 340, nor have they shown a genuine issue of material fact warranting reversal, *El-Khalil*, 504 Mich at 160. Accordingly, the trial court did not err by granting summary disposition to defendants.

## D. MISCELLANEOUS ARGUMENTS

Plaintiffs additionally argue that 1) the rezoning of the property constituted illegal spot zoning, and 2) the affidavits presented in support of the Superior Township defendants' motion for summary disposition are subject to challenge, and indicate that a genuine issue of material fact exists. Neither of these arguments were presented in plaintiffs' statement of the issues presented. "An issue not contained in the statement of questions presented is waived on appeal." *English v Blue Cross Blue Shield of Mich*, 263 Mich App 449, 459; 688 NW2d 523 (2004); see also MCR 7.212(C)(5) (stating that an appellate brief must include "[a] statement of questions involved, stating concisely and without repetition the questions involved in the appeal."). The Court therefore need not address either claim.

In any event, both claims are without merit. As to whether the Board engaged in spot zoning by rezoning the Dixboro property from A2 to PC, we conclude that it did not. Spot zoning is "[a] zoning ordinance or amendment . . . creating a small zone of inconsistent use within a larger zone." *Penning v Owens*, 340 Mich 355, 367; 65 NW2d 831 (1954). Although much of the land around the Dixboro property is zoned as A2, a large swath of property directly east of the Dixboro property is zoned as PC. Seven other PC districts exist in Superior Charter Township, albeit not adjacent to the Dixboro property. That there is already community zoned property nearby suggests that the rezoning was consistent with the overall zoning plan and was not arbitrary or capricious. Additionally, GS and the Superior Township defendants presented evidence that rezoning the property and building a mental health facility on it was consistent with the Master Plan, and would further the Township's goals of maintaining natural spaces and preventing high-density developments from being built in the area. We again find no cause to second guess the Board's legislative determination to rezone the property.

Plaintiffs' final argument suggests that genuine issue of material fact exists on the basis of the affidavits attached to the Superior Township defendants' motion for summary disposition. According to plaintiffs, the affidavits were highly generalized, particularly with regard to conclusions made about the availability of public water and sewer access on the property. It is unclear what plaintiffs are arguing, except perhaps that the trial court should have given more weight to the affidavit of plaintiffs' expert with regard to those issues. Plaintiffs nevertheless fail to explain how the affidavits have any direct bearing on the Board's legislative decision to rezone the property, other than to show that plaintiffs disagree with that decision. *Kyser*, 486 Mich at

520-522. As earlier noted, an appellant may not "leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Mitcham*, 355 Mich at 203. This argument has therefore been abandoned.

## III. CONCLUSION

Ultimately, the Board's legislative decision to rezone the property was not arbitrary or unreasonable. Thus, the trial court did not err by granting summary disposition to defendants.

Affirmed.

/s/ Mark T. Boonstra
/s/ Anica Letica
/s/ Michelle M. Rick