*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

HECATE ENERGY SUNFISH SOLAR 2, LLC,

Plaintiff-Appellee,

v

E. RICHARD MIDLAM, JR., and LISA R. MIDLAM, Cotrustees of the EARL R. MIDLAM AND HAZEL M. MIDLAM CONTINUING TRUST,

Defendants-Appellants.

UNPUBLISHED
September 15, 2025
9:27 AM

No. 372493
Calhoun Circuit Court
LC No. 2024-000807-CH

Before: WALLACE, P.J., and RIORDAN and REDFORD, JJ.

PER CURIAM.

In this breach-of-contract action, defendants E. Richard Midlam, Jr., and Lisa R. Midlam, as cotrustees of the Earl R. Midlam and Hazel M. Midlam Continuing Trust, appeal as of right the trial court's orders granting summary disposition and a preliminary injunction to plaintiff, Hecate Energy Sunfish Solar 2, LLC. We reverse.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Defendants own two parcels totaling approximately 178 acres of land in Calhoun County. Hecate Energy Sunfish Solar, LLC ("Sunfish Solar"), a subsidiary of Hecate Energy, a large renewable-energy developer, approached defendants and various other landowners in the county to discuss leasing their land for installation of solar panels as part of a clean-energy project. On October 21, 2021, Sunfish Solar and defendants signed a lease-option agreement in which defendants granted Sunfish Solar the option to lease their property for a period of years at a certain price per acre. Sunfish Solar agreed to pay defendants a total of $122,500 to keep the lease option for five years.

The option agreement further provided that, to exercise the option, Sunfish Solar would send copies of the lease agreement to defendants and that defendants agreed to execute it within two business days and return the signed original to Sunfish Solar. The option agreement included a description and depiction of defendants' property and included a "restricted area" to preserve

-1-

hardwood trees in that area. The option agreement also included a copy of the unexecuted lease agreement, in which the parties set forth various terms, including that Sunfish Solar would have the right to clear trees and other vegetation. The unexecuted lease did not contain a description or map of the property at issue. Instead, the unexecuted lease contained a blank space for those terms accompanied by the phrase "[To be inserted]."

In late 2023, Sunfish Solar assigned the option agreement to plaintiff, Hecate Energy Sunfish Solar 2, LLC, and sent a letter informing defendants of the assignment. Then, in March 2024, plaintiff sent defendants a notice that it was exercising the lease option for defendants' property and asked defendants to execute copies of the lease that it sent with its notice. The lease that plaintiff sent for execution included a legal description of defendants' property but, notably, did not include the map showing the restricted area or any statement about the preservation of hardwood trees.

Defendants did not sign the lease agreement, and plaintiff filed a complaint against defendants for breach of contract. With its complaint, plaintiff moved for summary disposition under MCR 2.116(C)(10) and for a preliminary injunction, asking the trial court to order defendants to sign the lease so that plaintiff could move forward with its solar project. The trial court ultimately granted both of plaintiff's motions, and this appeal followed.

## II. SUMMARY DISPOSITION

Defendants argue that the trial court erred by granting summary disposition to plaintiff. Because plaintiff's attempt to exercise the option did not strictly comply with the terms of the option agreement to accept the offer, we agree.

## A. PRESERVATION AND STANDARD OF REVIEW

"In civil cases, Michigan follows the 'raise or waive' rule of appellate review." *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, 347 Mich App 280, 289; 14 NW3d 472 (2023) (quotation marks and citation omitted). "To preserve an issue, the party asserting error must demonstrate that the issue was raised in the trial court." *Id*. Although plaintiff asserts defendants did not raise the arguments that they make on appeal in response to their motion for summary disposition, the record reflects that defendants consistently maintained that the reason they did not believe that they were obligated to sign the lease was because the lease did not include the restricted area in its description of the property. Under the circumstances, the interpretation of the option agreement was raised in, and decided by, the trial court, and, therefore, the issue is preserved for appellate review. See *id*.

We review a trial court's ruling on a motion for summary disposition de novo. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). The trial court granted summary disposition to plaintiff under MCR 2.116(C)(10). As explained by our Supreme Court:

> A motion under MCR 2.116(C)(10) . . . tests the *factual sufficiency* of a claim. *Johnson v VanderKooi*, 502 Mich 751, 761; 918 NW2d 785 (2018). When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion. *Id*. A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of

material fact. *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 5; 890 NW2d 344 (2016). "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Johnson*, 502 Mich at 761 (quotation marks, citation, and brackets omitted). [*El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019).]

This appeal also involves the interpretation of an option contract, which is a question of law that we review de novo. *In re Smith Trust*, 480 Mich 19, 24; 745 NW2d 754 (2008).

## B. ANALYSIS

Generally, to form a contract, there must be "mutual assent or a meeting of the minds on all the essential terms." *Kloian v Domino's Pizza, LLC*, 273 Mich App 449, 453; 733 NW2d 766 (2006).

> "[A] contract is an agreement between parties for the doing or not doing of some particular thing and derives its binding force from the meeting of the minds of the parties . . . ." *In re Mardigian Estate*, 312 Mich App 553, 562; 879 NW2d 313 (2015) (quotation marks and citation omitted). "A valid contract requires five elements: (1) parties competent to contract, (2) a proper subject matter, (3) legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation." *AFT Mich v Michigan*, 497 Mich 197, 235; 866 NW2d 782 (2015). "This Court's goal in interpreting a contract is always to ascertain and give effect to the intent of the parties as reflected in the plain language of the contract." *Patel* [*v FisherBroyles, LLP*, 344 Mich App 264, 271-272; 1 NW3d 308 (2022)]. "The words of a contract are interpreted according to their plain and ordinary meaning, and this Court gives effect to every word, phrase, and clause while avoiding interpretations that would render any part of the document surplusage or nugatory." *Id*. at 272 (quotation marks and citation omitted). [*MK by Next Friend Knaack v Auburnfly, LLC*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 364577); slip op at 3 (first alteration in original).]

As previously stated, this appeal involves the interpretation of an option contract. Our Courts strictly construe option contracts. *Le Baron Homes v Pontiac Housing Fund*, 319 Mich 310, 313; 29 NW2d 704 (1947). "An option contract is an enforceable promise not to revoke an offer. It is a continuing offer or agreement to keep an offer open and irrevocable for a specified period." *In re Smith Trust*, 480 Mich at 25 (quotation marks and citation omitted).

"An option may ripen into a binding bilateral contract of purchase and sale by a seasonable exercise of the option and compliance with its terms by the optionee." *Le Baron Homes*, 319 Mich at 315. To exercise an option "strict compliance with the terms of which is required; acceptance must be in compliance with the terms proposed by the option both as to the exact thing offered and within the time specified; otherwise the right is lost." *Id*. at 313 (quotation marks and citation omitted). Consequently, "substantial compliance with the terms of the option is not sufficient to constitute an acceptance of the offer." *Bergman v Dykhouse*, 316 Mich 315, 319; 25 NW2d 210 (1946) (quotation marks and citation omitted).

Under the option agreement, plaintiff could exercise the option by sending written notice to defendants within the option period, along with two copies of the lease for defendants to sign. The option agreement further stated that, within two business days after receiving the notice, defendants "shall promptly execute and return" the copies of the lease to plaintiff. Attached to the option agreement was an exhibit titled, "Exhibit 'A' to Option Agreement for Lease of Real Estate [Legal Description / Depiction] of Property." The exhibit included the property deeds and legal descriptions of the two parcels from the local land record books and a map of the parcels. The map bore a text box and shaded area that stated: "Restricted area. Owner and Lessee agree that the hardwood trees in this area are to remain." The parties appended a copy of the unexecuted lease as an exhibit to the option agreement, but it contained blank spaces for certain terms like the date of commencement and rental amounts, and, for the description or depiction of the property, the exhibit stated, "[To be inserted]."

When plaintiff notified defendants that it intended to exercise the option, plaintiff sent copies of the lease for execution by defendants as required by the option agreement. The copies of the lease were updated with specific dates and rental amounts, and they also included a legal description of the properties to be leased as prepared by a land surveyor on March 1, 2024. Defendants did not dispute the accuracy of the survey or the surveyor's description of the properties, but they declined to sign the lease because it included no reference to the restricted area or the preservation of defendants' hardwood trees bargained for in the option agreement.

When it granted summary disposition to plaintiff, the trial court did not agree with plaintiff's apparent position that the restricted area was only relevant to the option agreement because that interpretation would render that contract term nugatory. But the trial court ruled that, because plaintiff made payments under the option agreement, and because plaintiff notified defendants that it intended to exercise the option within the option period, defendants were obligated to sign the lease and breached the option agreement by failing to do so. The trial court declined to rule whether the lease encompassed the restricted area or whether that area was exempt from plaintiff's use because it concluded that the only issue before it was whether defendants breached the option agreement. The trial court anticipated that a court could decide in a future action whether the lease contained any restrictions.

We hold that the trial court erred by ruling that defendants breached the option agreement and by ordering defendants to execute the lease provided by plaintiff. Strictly construing the option agreement, as we must, defendants contracted to lease their properties to plaintiff, except that the parties agreed that plaintiff was not to remove hardwood trees from the restricted area. See *Le Baron Homes*, 319 Mich at 313. Importantly, the property description in the option agreement was the only description of "the exact thing" that defendants were offering plaintiff in the option agreement, and the option agreement did not otherwise permit its terms to merge into the lease. As previously noted, the lease did not include any reference to the restricted area. But the lease gave plaintiff expansive rights to a "sunlight easement" over defendants' land and any adjoining land owned by defendants, as well as an "[a]n easement to trim, cut down and remove all trees (whether natural or cultivated), brush, [and] vegetation" on defendants' land or adjoining land "which might obstruct receipt of or access to sunlight throughout the Land . . . ." The lease also included a provision which stated the "[l]ease contains the entire agreement between the parties relative to the occupancy of the Premises."

Plaintiff was aware of the impact that the removal of the restricted area would have on defendants' ability to retain the trees on their property. Although plaintiff took the position that it was premature for defendants to argue about the restriction because plaintiff had yet to begin clearing any vegetation on the property, plaintiff's counsel openly acknowledged at the motion hearing that the failure to carry over into the lease the restricted area in the description of the property would allow plaintiff to clear the hardwood trees in the restricted area. In other words, plaintiff entered into an unambiguous option agreement for the lease of defendants' property with a restricted area where hardwood trees could not be removed, and then excluded the restricted area in the lease that plaintiff wanted defendants to sign.

Plaintiff argued in the trial court that defendants could have consulted with counsel before entering into the option agreement, which included a copy of the lease. Again, however, the copy of the lease appended to the option agreement did not include a description of the property to be leased. The only description of the property to be leased was in the option agreement itself, and this reflected the agreement of the parties that plaintiff could lease defendants' property but could not cut down hardwood trees in the restricted area. By failing to include the restricted area in the lease that plaintiff wanted defendants to sign, plaintiff did not comply with the terms in the option agreement "as to the exact thing" that defendants offered. See *id*. Moreover, we decline to ignore the restricted area in the option agreement. It would render the contractual term nugatory because plaintiff did not intend to honor the term in the lease itself. This is contrary to well-established rules of contract interpretation. See *MK by Next Friend Knaack*, ___ Mich App at ___; slip op at 3.

Plaintiff complied with several terms of the option agreement by making the payments to defendants and sending a notice in writing to exercise the option. However, the lease that plaintiff sent for defendants to execute included a description of defendants' property that did not comply with the option agreement. Substantial compliance with the terms of an option agreement is not sufficient to form a binding agreement. *Bergman*, 316 Mich at 319. Further, although parties to a contract may modify the terms of existing agreements, a party may not unilaterally do so, and a modification will not be enforced if no mutual intent is proven. *Quality Prod & Concepts Co v Nagel Precision, Inc*, 469 Mich 362, 370-372; 666 NW2d 251 (2003). Plaintiff has shown no evidence that defendants intended to remove the restriction. Therefore, defendants did not breach the option agreement by declining to sign a lease that did not strictly comply with the exact thing offered in the option agreement. The trial court erred by granting summary disposition to plaintiff and ordering defendants to sign the lease.

## III. PRELIMINARY INJUNCTION

Defendants argue that the trial court also erred by granting plaintiff's motion for a preliminary injunction. Again, we agree.

## A. STANDARD OF REVIEW

"We review for an abuse of discretion a trial court's ruling on a request for a preliminary injunction." *Slis v Michigan*, 332 Mich App 312, 335; 956 NW2d 569 (2020). "An abuse of discretion exists when the decision is outside the range of principled outcomes." *Hambley v Ottawa Co*, 348 Mich App 585, 592; 19 NW3d 411 (2023) (quotation marks and citation omitted).

-5-

"A trial court necessarily abuses its discretion when it makes an error of law." *Pirgu v United Servs Auto Ass'n*, 499 Mich 269, 274; 884 NW2d 257 (2016).

## B. ANALYSIS

"A preliminary injunction is generally considered a form of equitable relief that has the objective of maintaining the status quo pending a final hearing concerning the parties' rights." *Slis*, 332 Mich App at 336. The court must consider the four following factors in its decision to grant a preliminary injunction:

> (1) whether the applicant has demonstrated that irreparable harm will occur without the issuance of an injunction, (2) whether the applicant is likely to prevail on the merits, (3) whether the harm to the applicant absent an injunction outweighs the harm an injunction would cause to the adverse party, and (4) whether the public interest will be harmed if a preliminary injunction is issued. [*Id*. at 337.]

"The party requesting 'injunctive relief has the burden of establishing that a preliminary injunction should be issued . . . .' " *Id*. at 337, quoting MCR 3.310(A)(4).

Although the trial court granted plaintiff's motion for summary disposition and dismissed the case after ordering defendants to sign the lease, the trial court concurrently ruled that injunctive relief in the form of an order that defendants must sign the lease was appropriate because there was merit to plaintiff's claim that it satisfied the terms of the option agreement by making payments to defendants and by sending notice of its intent to exercise the option within the time permitted.[1] As discussed, this ruling was erroneous because the trial court failed to strictly construe the terms of the option agreement. Plaintiff's claim for injunctive relief should have failed because of its failure to comply with the terms of the option agreement.

Plaintiff argued that it would suffer irreparable harm if defendants did not sign the lease because the property was integral to its solar-energy project. But plaintiff also conceded that, absent the restriction, the lease gave plaintiff the right to clear the property of trees. For that reason, ordering defendants to execute the lease without the restriction would cause defendants to lose mature hardwood trees that they bargained with plaintiff to protect. Conversely, plaintiff presumably viewed defendants' property as useful for its solar-energy project even if it could not remove all the hardwood trees on one portion of it because it entered the option agreement for that "exact thing." Under the circumstances, the irreparable harm would be to defendants rather than to plaintiff because plaintiff could adjust its project as it anticipated doing when it negotiated the

---

[1] We note that the trial court's decision to grant the motion for a preliminary injunction concurrent with its decision to grant summary disposition in favor of plaintiff and dismiss the case is irregular because the purpose of granting a preliminary injunction is to "maintain[] the status quo pending a final hearing concerning the parties' rights." *Slis*, 332 Mich App at 336. Entry of such an order was moot because the trial court granted the same relief in its order granting summary disposition in favor of plaintiff. *GMC v Dep't of Treasury*, 290 Mich App 355, 386; 803 NW2d 698 (2010) ("An issue is . . . moot when a judgment, if entered, cannot for any reason have a practical legal effect on the existing controversy.").

option agreement.  See *Slis*, 332 Mich App at 337.  Finally, although there is arguably significant public interest in renewable-energy sources, the public interest is better served by allowing parties the freedom to contract to permit the lease of land for the public project while also allowing defendants to protect the property interests to which both parties consented.  See *Pirgu*, 499 Mich at 274.  The trial court abused its discretion by granting plaintiff's motion for preliminary injunction.

Reversed and remanded for further proceedings consistent with this opinion.  We do not retain jurisdiction.

/s/ Randy J. Wallace
/s/ Michael J. Riordan
/s/ James Robert Redford